193 P.2d 442

**CRAIG v. DE BERGE et al.**

No. 5012.

Supreme Court of Arizona.

April 26, 1948.

Fred O. Wilson, of Phoenix, for petitioner.

Robert E. Yount, of Phoenix (H. S. McCluskey, of Phoenix, of counsel), for respondents.

UDALL, Justice.

Ralph D. Craig, petitioner, has brought this matter here by writ of certiorari to have reviewed an award made by the Industrial Commission of Arizona (hereafter termed the Commission) on November 19, 1946, (supplemented by a nunc pro tunc order of December 5, 1946, making a slight adjustment in amounts) denying the petitioner further compensation. A petition for rehearing was granted and on May 27, 1947, a final order was entered affirming the amended decision of November 19, 1946. It is only these awards that are now before us for consideration. The respondent employer makes no appearance as he

is insured under the State Compensation Fund.

It is not disputed that the petitioner, a married man of the age of 56 years, while in the employ of respondent employer, Ray DeBerge, on December 20, 1943, received an injury by accident arising out of and in the course of his employment, nor is the amount of his earnings now in controversy. It appears that while descending a stairway with narrow steps, carrying a load of merchandise in his arms weighing approximately 75 pounds, his foot slipped one or more steps and he came down with his weight on his right foot. He felt an immediate sharp pain in the region of his lower back. The injury was immediately reported to his employer, who directed him to a physician. He was first examined and treated by Dr. G. Robert Barfoot, who, in his initial report to the Commission, described the injury as "tenderness over both sacroiliac joints at the sacrolumbar region". He further stated that the X-ray examination made by W. Warner Watkins, M.D. showed "negative for recent injury, old sacroilaic arthritis". That the physician did not consider this injury serious was evidenced by the fact that he estimated treatment for about two weeks would permit the petitioner to return to his usual work.

However, treatment of petitioner was ineffective as various complications arose which somewhat baffled, for a time, the medical practitioners who examined and treated him. The injured man was never able to return to his usual work nor was he thereafter capable of doing even light work. The Commission immediately after the injury assumed jurisdiction awarding petitioner temporary total disability. As a result of various hearings and rehearings, awards and amended awards (which we deem unnecessary to chronicle), there was paid to the petitioner between the date of the injury and November 19, 1946, (when further compensation was denied) sums aggregating $5250.67. During this entire period petitioner was treated with utmost kindness and consideration. The Commission furnished him with the best of medical care, as, in all, more than a dozen of the leading physicians and surgeons of the state examined and re-examined him using all of the most modern scientific treatments and devices known to the profession, such as extensive laboratory examinations at the Pathological Laboratory and Physiotherapy at Lois Grunow Clinic; also numerous X-ray pictures were taken. The entire personnel of the State Medical Advisory Board on more than one occasion carefully reviewed his case. Ultimately on November 12, 1946, Drs. W. W. Watkins, A. C. Kingsley, J. M. Greer and J. Lytton-Smith, who had been appointed by the Commission under its rule No. 55, submitted a report which reads in part:

"Comments: As a result of our examination and review of the file, we are of the opinion that the patient's present disability is not related to the injury sustained on December 20, 1943." It was

upon the basis of this medical report that the Commission determined that the terminal point had been reached and entered its order denying further compensation.

Our task in making this review has been made more difficult by reason of the fact that attorney for petitioner has not complied with the rules which require assignments of error but is relying wholly upon some nine propositions of law. Respondents nevertheless have met the arguments advanced by petitioner in his brief, hence, in order to do justice to the injured man, we have painstakingly examined the voluminous record in its entirety and shall endeavor to dispose of the controverted legal questions raised.

 The following are well-settled principles in workmen's compensation law. An employer is not an insurer of the health of his employees, but he takes an employee subject to his condition when he enters the employment. Furthermore employer is not responsible for disability resulting from a pre-existing disease or condition which causes a loss of earning power unless disease is proximately produced or aggravated· by the injury complained of. This court does not weigh the testimony, but only searches the record to see whether the Commission's findings are supported by any substantial evidence, even though there might be other contradicting evidence. Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P. 2d 297. See also Matter of Mitchell et al., 61 Ariz. 436, 150 P.2d 355.

 The petitioner advances as a proposition of law that it is the duty of the Commission, as the triers of fact, "to construe the evidence liberally in favor of the injured man". He cites as authority for this proposition the case of Stephens v. Miami Copper Co., 59 Ariz. 528, 130 P.2d 507, wherein such a statement appears (though the latter part of the same paragraph (syl. #5) somewhat negatives the holding). While we have repeatedly held that the Workmen's Compensation Act, being remedial in character, should be liberally construed, (See Notes to Decisions following sec. 56-901, A.C.A.1939, for a few of the many cases so holding), however, we believe that in the matter of weighing evidence by the triers of fact, whether it be a trial court or some tribunal exercising quasi-judicial functions, the scales of justice should not be weighted in favor of either party to a hearing, but to the contrary that evidence is always to be honestly and impartially considered and fairly weighed irrespective of the nature of the proceedings. We disapprove of that portion only of the Stephens case, supra, holding to the contrary, and reiterate as a correct rule the pronouncement made in the case of Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638, 640, to the effect: "Finally, although the facts to sustain or deny an award must be fairly weighed by the Commission, the Act itself is remedial and its scope is to be liberally construed."

■ The petitioner contends that the final award of May 27, 1947, is fatally defective since no findings were there entered in regard to the testimony adduced at the rehearing held on January 24, 1947, it being his position that in affirming the previous award it was essential that the order contain findings as to such new evidence. It indubitably appears that the Commission considered this latter testimony before making its final award, and this supplemental transcript was forwarded to this court for our consideration.

The award of November 19, 1946, denying further compensation to petitioner, contains complete findings, and inasmuch as the testimony at the rehearing coincides with that previously given there was no occasion to make a repetitious summary in its final order affirming the decision previously made. To have done so would have served no useful purpose but merely added to the already voluminous record. Blankenship v. Industrial Commission, 34 Ariz. 2, 267 P. 203.

■ The fact in controversy before the Commission was the nature and extent of the injury and particularly the cause for the prolonged disability. These were matters peculiarly within the knowledge of the medical experts and of necessity the Commission relied upon their unanimous and conclusive findings. Caekos v. Stanley Fruit Co., 55 Ariz. 72, 98 P.2d 471; Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649. It is highly significant that after many months of observation and numerous examinations of petitioner all medical experts finally agreed in the diagnosis of undulant fever. In the opinion of the Medical Advisory Board the undulant fever was aggravating the subjective symptoms of arthritis, and there was no connection between the original injury and the various symptoms complained of by petitioner. There was no conflict in the medical testimony on this vital point.

■ These illuminating excerpts are taken from the testimony given by Dr. W. W. Watkins:

"In the first place the accident was not of a degree or character which would produce the symptoms of which he now complains and the amount was not of a degree which would permanently aggravate the osteoarthritis in his spine; therefore, some other explanation would need to be found for his symptoms and if there was other more reasonable explanations for his symptoms than the accident then it is logical to ascribe those symptoms to something else than the accident, in which case it would be almost a matter of coincidence that the persistence of symptoms and that the symptoms which he now has are not a continuation of symptoms which he had immediately following the injury but are just a continuation only in time and not in causation."

In answer to the question, "Then it would be your opinion rather than saying that even though he has a continuation of

the same symptoms as he describes them, that they were the result of some intermittent cause which has come in in the meantime and are now carrying them on rather than the original cause which was the accident?" Dr. Watkins answered: "Yes, because the record will show that every time he was examined there have been new symptoms that were not complained of in the previous examination so something is evidently going on there in him causing the development of new symptoms from time to time, and that cannot be the injury because the injury has long since passed."

To the question, "What is the reasonable explanation for a continuation of the symptoms as he described them to you, being in the same location, the same feeling and so on, that he had when he received the injury?" the doctor answered: "They change from time to time and they have been different at every examination. That is characteristic of undulant fever and is not characteristic of osteoarthritis."

Testimony of similar import was given by other distinguished medical experts composing the Advisory Board. The burden, of course, was upon the petitioner to establish by competent evidence the causal connection between the original injury and his continued disability beyond the period for which he has been compensated. This burden he has failed to carry. There is ample evidence to sustain the Commission's final award of May 27, 1947, denying pe-titioner further compensation; in fact, we find no evidence to the contrary.

Award affirmed.

STANFORD, C. J., and LaPRADE, J., concur.