210 P.2d 217

EMERY v. INDUSTRIAL COMMISSION et al.

No. 5187.

Supreme Court of Arizona.

Oct. 3, 1949.

Leonard S. Sharman, of Phœnix, for petitioner.

Robert E. Yount, of Phœnix, H. S. McCluskey and Donald J. Morgan, of Phœnix, of counsel, for respondents.

LA PRADE, Chief Justice.

Petitioner Lorenzo O. Emery sued out a writ of certiorari in this court to review and reverse the award of the Industrial Commission disallowing him compensation. Petitioner claims that he was injured on March 29, 1948, by an accident arising out of and in the course of his employment with Neil B. McGinnis Equipment Company. Petitioner, at the time of the alleged injury, was engaged with a coemployee in attempting to load a heavy piece of machinery (combine header) from a loading dock into a pickup truck. The header weighed about 800 pounds, was ap-

proximately 12 feet in length, 3½ feet in width, and graduated from zero to 4 feet in height. One end was swung over the edge of the dock and above the truck and gradually edged forward until it dropped into the bed of the truck, which was approximately 3 feet below the floor of the loading dock. In the process of attempting to slide the header forward in the truck bed, it caught, whereupon the coemployee jumped to the ground and shook the header, releasing it suddenly. The header then slid forward and dropped into the truck. With reference to the incident, petitioner stated, "He jarred whatever was loose and as it come loose it give me an awful jerk"; that as he was jerked he attempted to hold onto the header and hold its weight, in order to lessen its fall into the truck; and that at this time he felt a slight pain in the back of head and neck. Petitioner personally drove the truck back to the employer's establishment, where he and the other employee, with the aid of a mechanical crane, picked up the header and unloaded it. Petitioner then walked over to a desk for the purpose of writing up his time card and job tickets. When he attempted to pick up a pencil with his right hand, he noticed that he could not do so; this was approximately 40 minutes after the loading incident. He then tried to hang up a job ticket, at which time he fell to his knees. Declining assistance of co-employees, he got up and attempted to write up some more job tickets but again be-

came faint and fell. Within a few minutes he was removed to a hospital, and while enroute experienced another stroke. He remained in the hospital about two and one half hours, and while there experienced two more slight strokes. A month later at his employer's establishment he attempted to do some light work which did not require any lifting or much physical effort. Nevertheless, he was unable to work even to this extent, and remained in this employment only two weeks. On June 22nd he suffered an additional stroke, and at the time of giving his testimony in October had not been able to do any work and was unemployed. The various strokes resulted in partial paralysis on the right side of the body and speech impairment.

In relating the facts surrounding the loading incident the coemployee by affidavit stated, "When the header fell I jumped back. With the header on the bed of the truck I could see over the piece we were loading. * * * *He did not mention being hurt.*" (Italics supplied.)

Petitioner did not file his claim for compensation for injury with the Industrial Commission until July 31, 1948, four months after the alleged strain. The employer's *first* report of injury of this employee was dated July 28, 1948. The record contains no explanation for the four-months' delay in the presentation of the claim for compensation and the employer's first report.

Upon arriving at the hospital, petitioner was first treated by Dr. Charles N. Hor-

vath, medical resident, who, in a report to the commission dated August 30th, stated that the patient, at the time he was admitted to the hospital, related the incident concerning the lifting of the header, the sudden strain that had been thrown on him, and the pain in the back of head and neck. He further stated that Mr. Emery had revealed to him that he had suffered from high blood pressure for a number of years. The report contains this statement: "My impression at the time was that a small cerebral vessel had burst under the strain of lifting the combine and that symptoms began to appear after there was enough blood accumulated to cause pressure." On the evening in question, while Mr. Emery was still in the hospital, he was seen by Dr. Ben P. Frissell, his personal physician, who, in a report to the commission made subsequent to Emery's claim for compensation, stated that Emery had been under medical observation by him since the summer of 1945, at which time he was found to have moderate hypertension. With reference to his examination of Mr. Emery at the hospital, he stated: "* * * According to records and recollection there was no history of any definite injury accounting for these symptoms at that time. Since that time I understand Mr. Emery has filed a claim with the Industrial Commission stating that he strained himself by heavy lifting preceding the occurrence of the above symptoms. * * *"

Dr. Frissell's report also showed that on April 5, 1948, he saw petitioner following another attack of temporary aphasia and impaired function of the right upper extremity, with impaired vision and slowness of speech. These symptoms were of a temporary nature and preceded petitioner's return to work, April 19th.

At the time of the first award, the record before the commission consisted of petitioner's claim for compensation, the employer's report, the separate reports of Dr. Frissell and Dr. Horvath, and the affidavit of the coemployee. This record was transmitted to the medical advisor's office which reported: "The file on this case has been reviewed as requested in your memorandum of September 3, 1948. From the information available in the records it seems quite clear from a medical standpoint that the attack described was the result of cerebral vascular pathology *occurring in the natural progress of hypertension vascular disease. The interval of time between the lifting described and the attack, as well as the fact that there have been other attacks as described in Dr. Ben P. Frissell's letter, is indicative of the spontaneous character of the on-set and is contrary to any causative relationship between the lifting strain and the subsequent paralytic symptoms.*" (Italics supplied.) (Signed by Dr. James R. Moore).

On this record the commission made its findings and award—"That said applicant

did not sustain a personal injury by accident arising out of and in the course of his employment March 29, 1949"—and refused any compensation. Upon application for rehearing, a formal hearing was had at which time Dr. Horvath, a Dr. Taylor, and the applicant testified before the commission's referee. On this examination Dr. Horvath testified concerning his examination made to determine the reflexes of the body of patient, etc., and particularly as follows:

"Q. In your opinion, Dr. Horvath, assuming that Mr. Emery did suffer from some high blood pressure prior to this accident and occasionally had headaches in connection therewith, do you feel that this lift that was described to you was the cause that brought about this stroke on that particular day? A. *Yes, I do.* (Italics supplied.)

"Q. Do you feel that if Mr. Emery had high blood pressure for some time before but had not been particularly bothered with it and had been able to work regularly that he would have been able to continue to work if he had not come in contact with this severe strain at that time? A. That is very hard to say, because certainly anybody under high blood pressure is subject to a vascular accident at any time. Many times they will just be walking along and they will get a stroke."

Then on cross-examination as follows:

"Q. *There is no way that you could determine that whether or not this cerebral accident was caused by the strain or coincidental with the work?* A. *No,' there is not."* (Italics supplied.)

"Q. You indicated a while ago that these cerebral accidents frequently occur while a person is sitting or walking down the street? A. That is right."

\*    \*    \*    \*    \*    \*

"Q. As to my question you would say, would you not, that this ensuing stroke and his condition thereafter had been gradually exaggerated and made worse because of this severe lift and the ensuing stroke? A. I can only *postulate* upon that and state that I feel it was caused by the lift." (Italics supplied.)

\*    \*    \*    \*    \*    \*

"Q. Doctor, how do you account for the interval between the time of lifting and the attack which came on a half hour or so later? A. The interval I would say is probably due to a sudden rupture of the vessel occurred first, and then if the vessel was not large enough to cause immediate symptoms certainly as it kept oozing—or let us say—that is a postulation —either a clot formed and then suddenly broke loose again to allow more hemorrhage to occur which allowed for the interval."

Dr. D. N. Taylor, an osteopath, testified that he first examined the petitioner on August 30, 1948; that he took the history of the patient and made a physical examination. In reply to a hypothetical

question containing much of the evidence heretofore related, he answered:

"Q. * * * would you say that this severe lift that he underwent would be the cause of a stroke that occurred at that time? A. There is nothing that can be done or said that will prove that statement conclusively. * * * So to answer your question directly it is possible for sudden lift and strain to cause a hemorrhage on a hypertensive patient."

The witness then gave as his opinion that the sudden strain and extra pressure experienced by petitioner at the time of the alleged lifting incident provoked the stroke.

▮▮▮ Petitioner's assignments of error attack the finding that he did not sustain a personal injury by accident arising out of and in the course of his employment. He insists that there is no evidence to support this finding, but that on the contrary the evidence conclusively shows that the injuries sustained were attributable to his employment. Again we call attention to the fact that the review provided for in such cases as this is contained in section 56-972, A.C.A.1939, reading in part as follows: "* * * The review shall be limited to determining whether or not the commission acted without or in excess of its power; and, if findings of fact were made, whether or not such findings of fact support the award under review. If necessary the court may review the evidence.

With this limitation in mind we shall consider petitioner's contentions. We have rather fully delineated the facts before the commission, and purposely so, in lieu of foreclosing petitioner by merely stating that "the evidence conclusively supports the findings of the commission." It has been repeatedly determined by this court that the findings of the Industrial Commission are to be given the same consideration as those of a jury or trial judge, and where there is reasonable evidence to support the award, or reasonable men might draw either of two inferences from the facts, the commission's findings must be sustained. West Chandler Farms Co. v. Industrial Comm., 64 Ariz. 383, 173 P.2d 84. Findings of fact made by the commission on conflicting evidence will not be disturbed on appeal. Johnson v. T. B. Stewart Construction Co., 37 Ariz. 250, 293 P. 20. Other well settled rules of law applicable in this jurisdiction are: (1) The Industrial Commission is not required as a matter of law to accept the uncorroborated testimony of a claimant in regard to an accident, Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649; and (2) an employee-claimant for compensation must show affirmatively that he is entitled to compensation under the act in question, Aluminum Co. of America v. Industrial Comm., 61 Ariz. 520, 530, 152 P.2d 297.

▮▮▮ There is no question but that petitioner suffered a stroke on the day claimed.

In fact he suffered five strokes on that day and has suffered additional strokes since that time, all of which have resulted in physical disability and rendered him unemployable. It is not enough that he suffered an unexpected internal failure to make him eligible to receive compensation. In order to receive compensation, an employee must have been injured "by accident arising out of, and in the course of employment." Section 56-930, 56-931, A.C.A.1939. Both elements must be proved. Ocean Accident & Guarantee Corp. v. Industrial Comm., 32 Ariz. 265, 257 P. 641. Nor is a case made for compensation by merely showing that a functional failure was coincidental with the work. Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017. In the instant case the commission undoubtedly believed, and not without reason, that the injury suffered was not attributable to the employment. If the petitioner experienced any jerk or strain, it was of small consequence, for he made no mention of it to his fellow employee, nor was the coemployee aware of the claimed event. Forty minutes after the loading incident, while standing at his desk performing his ordinary and usual duties, petitioner collapsed with a stroke. No claim is made that the energy exerted in attempting to write up his job tickets contributed to the injury. Four months elapsed before petitioner gave any notice that he considered himself to be an industrial casualty. Apparently the employer did not realize that his employee might be an industrial casualty. Neither of the attending physicians filed any report with the commission as required by law. Section 56-966, A.C.A.1939; Maryland Casualty Co. v. Industrial Comm., 33 Ariz. 490, 266 P. 11. No report could be expected from Dr. Frissell for the reason that petitioner did not inform him of the lifting incident and alleged strain, nor did he inform him of any event that he considered had any tendency to establish a causal connection between his employment and the stroke. The medical testimony based entirely upon *opinion* was at complete variance. Dr. Moore of the medical examiner's board, after reviewing the entire evidence, including the statements of the other doctors, was of the opinion that petitioner's condition was "the result of cerebral vascular pathology occurring in the natural progress of hypertension vascular disease," and that there was *no causative relationship* between the lifting strain and the subsequent paralytic symptoms. The point in contention was not susceptible to establishment by positive knowledge, but only by opinion. The opinion evidence to the effect that petitioner's injury was not employment connected, together with all of the facts and circumstances above enumerated, furnished ample foundation for the commission's findings. Sherwood v. Industrial Comm., 53 Ariz. 518, 91 P.2d 259; see Knapp v. Arizona Highway Department, 56 Ariz. 54, 104 P.2d 180, on findings based on conflicting medical opinions.

■ It is only disability *arising out of* and in the course of employment that is compensable. The workman's compensation fund is not a health fund. Rather it is an insurance fund established by law to protect injured workmen from economic loss due to injuries attributable to the employment, or in which the work performed was an efficient cooperating cause.

The award is affirmed.

UDALL, STANFORD, PHELPS and DE CONCINI, JJ., concur.