213 P.2d 373

## TREADWAY v. INDUSTRIAL COMMISSION et al.

### No. 5152.

Supreme Court of Arizona.

Jan. 3, 1950.

Pacific Freight Lines, brings before us for review an award of The Industrial Commission of Arizona, denying him compensation for a claimed personal injury by accident said to have occurred on or about January 25, 1947, and allegedly arising out of and in the course of his employment. The respondent Commission is the insurance carrier.

The case involves a somewhat novel situation in that it is the first time in this jurisdiction that compensation has been asked for an injury by an accident which is claimed to have caused the disease of coccidioidomycosis, more commonly known as "San Joaquin Valley Fever", and also merely as "valley fever". Petitioner's original claim was for benefits under the Arizona Occupational Disease Disability Law. Laws 1943, ch. 26, now appearing as Art. 12, ch. 56, A.C.A. 1939. Inasmuch, however, as this was not one of the occupational diseases listed under that law the Commission rightly determined that it had no jurisdiction in the premises and entered an order denying the claim. This order which was adhered to by it on rehearing has become final as no appeal was taken therefrom. Shortly thereafter petitioner applied for compensation under the Workmen's Compensation Act, Art. 9, ch. 56, A.C.A. 1939. Based upon medical reports and other evidence then before it, the Commission, in an uncontested hearing, found that the applicant had "sustained a personal injury by accident arising out of and in the course

D. Kelly Turner, Wade Church, of Phoenix, for petitioner.

Robert E. Yount, of Phoenix, H. S. McCluskey and Donald J. Morgan, of Phoenix, of Counsel, for respondents.

UDALL, Justice.

Petitioner, Ben R. Treadway, a 42 year old truck driver employee of respondent

304

of his employment", and on May 1, 1947, it made an award for accident benefits and compensation for temporary disability. The respondent employer, however, protested this award and petitioned for a rehearing for the reason that it was of the belief that further analysis of the freight items (army tents) handled by the petitioner should be made and considered by the Commission before it made a final award. Rehearing was granted and action was taken to secure additional scientific information. It is apparent from the record that the Commission gave this case more than usual consideration due to the complexity of diagnosis and the research necessary to secure adequate information and evidence on this little known subject of "valley fever". Two formal hearings were held where the parties had ample opportunity to submit their evidence. Finally on July 24, 1948, the award (now under review) denying compensation was entered.

The assignments of error are to the effect that the Commission's findings of fact, conclusions of law and award entered pursuant thereto are erroneous, contrary to the evidence and contrary to law. In determining this matter it is our duty to consider the facts in the light most favorable to sustaining the award. Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638. Basically petitioner's case rests upon the premise that in the course of his work in Phoenix, Arizona, during the latter part of December, 1946, he was required to assist in unloading at the Lightning Delivery warehouse, some three or four trailer loads of government surplus property consisting of a number of used army tents which had been shipped to the purchaser from the San Bernardino Air Field at San Bernardino, California. Evidently petitioner expected the Commission to take judicial notice of the fact that by reason of the name "San Joaquin Valley Fever" and a statement from the Supreme Court of California to be hereinafter quoted, that anything coming from this claimed endemic area might well be a carrier of the fungus spores of this disease. However there is not a scintilla of evidence as to where the United States Army used the tents in question nor is there any showing that same were ever in the San Joaquin Valley. Furthermore there is no proof, medical or otherwise, to sustain the statement in petitioner's second application "that he is now informed that the entire San Joaquin Valley is noted for an infestation of the fungus that produces this disease, and that the area in and around San Bernardino is also infested with the fungus producing this disease." It is of course a geographical fact of which we take judicial notice, that San Bernardino lies on the coastal plain east of Los Angeles and is a considerable distance from the San Joaquin Valley.

At the Commission's request, Henry N. Doyle, Industrial Hygiene Consultant of the Sanitary Engineering Division of the State Department of Health, aided by Dr.

Oscar Sussman, a bacteriologist, of the same Department, on November 10, 1947, took five dust samples from these tent covers, allowing, so Doyle said, "the liberated dust to fall on an exposed petri dish. These petri dishes contain the necessary growing medium for the development of any fungi that might be present in the dust". These plates were then sent to Dr. Charles Smith, of the Stanford University Medical School (an outstanding authority in this field), who reported that none of the cultures sent contained coccidioides although other fungi were found. It is conceded that the fact that specimens taken from the tents in question revealed the presence of no coccidioides fungus approximately one year after the alleged accident is not conclusive proof that there was no contamination at the time the applicant handled this shipment, however, it must be remembered that the burden was upon the petitioner to establish not only that he had "valley fever" which is admitted, but that this condition was caused by an accidental exposure to the fungus or mold causing such infection during the course of and in connection with his employment on or about January 25, 1947. The respondent employer and insurance carrier had no burden to affirmatively disprove petitioner's premise. Tooley v. Weisbarth, supra. Let us further examine the record then to determine whether this burden has been successfully met.

Petitioner's application for compensation recites "that exposure to these high concentrations of dust in a confined space between May 1, 1946 and January 25, 1947, resulted in applicant's present disability". Doubtless realizing that disease in order to constitute an "accident" must be traceable to a definite time and place, the "accident" here was, by the proof, narrowed down to the unloading of certain army tents the latter part of December 1946. The applicant's contention is that these tents had been brought from an area in California where valley fever is prevalent; that petitioner unloaded the tents from a covered trailer; that the tents were covered with dust, that the floor of the trailer was thick with dust after the tents had been removed; that valley fever fungus is carried in dust, and that the petitioner inhaled the dust and thereafter within the period of incubation was found by the Commission's board of medical examiners to be suffering from "valley fever". It is enlightening to note what this medical board, composed of Drs. Baldwin, Kober and Hamer, had to say with reference to petitioner's illness. We quote an excerpt from their report dated, March 11, 1947:

" * * * The first symptoms which might be related to the present illness were in November of 1946, when he developed a head and chest infection which he called "the flu" and for which he apparently did not seek medical attention. He had a cough

and some gray sputum at that time which persisted for about six weeks, but this was not severe enough for him to remain off work. He states that about Christmas time, he had another slight respiratory infection which lasted about one week.

"About January 15, of this year, he began to notice night sweats and felt fevers. He had a hacking cough which he attributed to cigarettes. On January 25, he took his temperature for the first time and found it to be 103.5 and called Dr. Leslie B. Smith who has treated him since that time, making a diagnosis of coccidioidomycosis. * *"

The petitioner upon being cross-examined as to this report and other matters testified in part as follows:

"Q. Actually Mr. Treadway, all you know about this is that you did get San Joaquin Valley Fever, you don't know whether the bugs were on the tents or where they were, do you? A. I believe there was a *very possible chance* of them being there due to the fact —

"Q. Just answer my question. You don't know, do you? A. No, sir.

"Q. *You are basing this upon possibilities* that you have heard? A. Yes.

"Q. You have made no investigation yourself? A. No.

"Q. The only thing you know is that you went to the doctor and he diagnosed it as San Joaquin Valley Fever? A. Yes, sir.

"Q. You worked on other dusty jobs prior to this, didn't you? back in October and November? A. Yes, Sir.

"Q. As you know this area here is noted for its dusty conditions, isn't that correct? A. Yes, sir.

\*    \*    \*    \*    \*    \*

"Q. Who was this other driver who helped you with this particular load? A. Claude Payne.

"Q. What did he do to help you? Was he helping you unload the tents? A. Yes, Sir.

"Q. He was working under the same conditions that you worked under? A. Yes, sir.

"Q. Has he ever gotten sick from this disease? A. Not to my knowledge.

"Q. As far as you know he is perfectly all right? A. Yes, sir.

"Q. *Since having had this disease you found out, have you not, that it is very prevalent in this area and that lots of people have it?* A. *Yes, sir.*

\*    \*    \*    \*    \*    \*

"Q. If you did catch this disease in line of your work it might have been from dusty jobs that you did other places. You can't tie it down to this particular shipment of tents, can you? A. No, inasmuch as we didn't take any test samples at that time to prove the case.

"Q. This is just a guess on your part as to that it might have come from these

tents? A. The fact that that was a particularly dusty load is why I did bring that case in mind." (Emphasis supplied.)

While it is unnecessary for us to determine such a question under the facts here shown to exist, we observe from the reported cases cited to us that there is respectable authority for the proposition that under certain circumstances an employee contracting a disease, whether in the immediate place of his employment, or in some other place in pursuance of his employer's direction, may recover compensation as for an injury by accident arising out of and in the course of his employment. For instance see Roe v. Boise Grocery Co., 53 Idaho 82, 21 P.2d 910, a case involving Rocky Mountain Spotted Fever (caused by the bite of a wood tick); Southern Colorado Power Co. v. Industrial Commission, 118 Colo. 186, 193 P.2d 885, the same type of case; Andreason v. Industrial Commission, 98 Utah 551, 100 P.2d 202, a bacillus enteriditis case. Apparently the only reported case involving "valley fever" is Pacific Employers Ins. Co. v. Industrial Acc. Comm., 19 Cal.2d 622, 122 P.2d 570, 571, 141 A.L.R. 798, where the Supreme Court of California, sitting in banc, sustained an industrial award for this disease. This opinion contains an interesting nonscientific discussion of "valley fever" which is strongly relied upon by petitioner. We quote: "It appears that the cause of coccidioidal granuloma is a mold or fungus which exists in the soil in San Joaquin Valley and Arizona, and that a person may become infected therewith through the respiratory tract by inhaling the mold which is blown about in the dust. The manifestations of the disease are quite similar to tuberculosis. Ordinarily the symptoms at the onset are practically the same as an ordinary cold. The secondary stage of the disease is coccidioidal granuloma. In most instances the disease does not progress beyond the primary stage. The incubation period is one to three weeks. * * * that the disease is contracted primarily in the San Joaquin Valley and Arizona * * *. * * * In areas outside the valley cases of the disease are an extreme rarity and in such cases it is usually felt that through some unknown factor of special contact these cases arise by reason of transportation of spores from the endemic area."

The following principles of law pertinent to the instant case are enunciated in the reported decisions, viz.: " * * There must be a causal connection between his employment, or his place of employment, and his illness—something which happened to him in the performance of his duties, or some contact he made at his place of employment while on duty there —which forms the connecting link between his employment and the contraction of the illness. * * *" [98 Utah 551, 100 P.2d 205].

" * * * That the disease must have a causal connection with the employment and not be merely coincident therewith. * * *" Andreason v. Industrial Commission, supra. In the Roe case, supra, it was recognized that neither the findings nor

an award of an Industrial Commission can be based upon surmise, conjecture, speculation or mere possibilities, but that they must be based upon facts or inferences deducible therefrom. To the same effect is our holding in the case of Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367, 374, that "Compensation awards must not be founded upon conjecture and speculation." Furthermore the law is well settled in those jurisdictions holding a disease to be an "accident" under certain circumstances that in order for an employee suffering with a disease to recover compensation, he must establish the fact that he was subjected to some special exposure in excess of that of the commonalty. Pacific Employers Ins. Co. v. Industrial Acc. Comm., supra; Pattiani v. Industrial Acc. Comm., 199 Cal. 596, 250 P. 864, 49 A.L.R. 446. Finally we have the principle that the employer is not an insurer of the health of his employees. Aluminum Co. of America, on Behalf of Defense Plant Corp., v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297; Craig v. De Berge, 67 Ariz. 168, 193 P.2d 442.

Applying these legal principles to the facts of the instant case it manifestly appears that the Commission correctly denied petitioner's claim for compensation, for the following reasons: the disease with which petitioner was admittedly suffering was not traceable to any definite time or place nor was there shown any causal connection between the alleged "injury by accident" (i. e. the disease) and his employment. At most it was shown to have been merely coincident therewith. This is insufficient as the employee must show that the injury had its origin from a risk connected with the employment and that it flowed from that source as a rational consequence. Emery v. Industrial Commission, 69 Ariz. 87, 210 P.2d 217; Ocean Accident & Guarantee Corp. v. Industrial Commission, 32 Ariz. 265, 257 P. 641. If we accept the nonscientific statement of the Supreme Court of California (heretofore quoted) that "valley fever" is endemic in Arizona, which statement is fortified by petitioner's own evidence that it is prevalent in this area, then petitioner has failed to establish any greater exposure than that of the commonalty. In reviewing this award we are not called upon to weigh the probabilities for or against the Commission's findings. We need only ascertain whether or not there is competent testimony to sustain it. Vilter Mfg. Co. v. Jahncke, 192 Wis. 362, 212 N.W. 641, 57 A.L.R. 627. Obviously an award favorable to petitioner's claim of an "accident", i. e. exposure to the fungus or mold causing his infection would necessarily have rested upon surmise, conjecture or mere possibilities. The facts and the inferences to be drawn therefrom all support the Commission's holding.

Award affirmed.

LA PRADE, C.J., and STANFORD, M. T. PHELPS, and DE CONCINI, JJ., concurring.