225 P.2d 702

**LOPEZ v. KENNECOTT COPPER CORP. et al.**

No. 5333.

Supreme Court of Arizona.

Dec. 18, 1950.

Art Van Haren, Jr., of Phoenix, for petitioner.

Robert E. Yount, Phoenix, for respondent Industrial Commission, H. S. McClus-

key and Donald J. Morgan, Phoenix, of counsel.

. LA PRADE, Chief Justice.

By writ of certiorari it is sought to review in this court an award of the Industrial Commission of Arizona denying compensation to the above-named petitioner. The award, after finding that the petitioner was employed by Kennecott Copper Corporation, which was subject to the provisions of the Arizona Workmen's Compensation Law, A.C.A.1939, § 56-901 et seq., found "That said applicant has failed to submit *conclusive* evidence to support history of accident arising out of and in the course of his employment on August 11, 1949." (Emphasis supplied.)

.It is the position of the Industrial Commission that the injuries sustained were self-inflicted, and consequently were not the result of accident arising out of and in the course of his employment. If the injuries were self-inflicted, these contentions are correct. Sec. 56-931, A.C.A.1939. If the injuries were not self-inflicted, then it is admitted that the injuries were caused by accident incurred during the course of employment, and arose out of it or a risk incidental thereto.

Quaere: Injury by accident or self-inflicted?

■ If the evidence is such that reasonable men could reach different conclusions on such issues, then the decision of the commission on the facts has the same force and effect as the finding of a jury, and will not be disturbed by this court. Federal Mutual Liability Ins. Co. v. Industrial Commission, 31 Ariz. 224, 252 P. 512; Emery v. Industrial Commission, 69 Ariz. 87, 210 P.2d 217.

■ Manifestly the finding of the commission that the applicant had "failed to submit conclusive evidence to support history of accident" is an incorrect statement of the rule applicable as to the sufficiency of the evidence necessary to sustain a compensable claim. The quality of the evidence or proof required to sustain an award of the Industrial Commission has been variously defined by this court. Perhaps the most comprehensive statement of the rule is contained in Cole v. Town of Miami, 52 Ariz. 488, 497, 83 P.2d 997, 1001, where it is said that " * * * the burden of proof is upon an applicant for compensation to show affirmatively by a reasonable preponderance of the evidence that he is entitled to such compensation, and the commission is not required to disprove his contention. * * * By preponderance of the evidence is meant such proof as satisfies the conscience and carries conviction to an intelligent mind. * * * In other words, the ultimate test is, does the evidence convince the trier of fact that one theory of the case is more probable than the other. * * *"

For variations in the statement of the rule see Blasdell v. Industrial Commission, 65 Ariz. 373, 181 P.2d 620; Craig v. De Berge, 67 Ariz. 168, 193 P.2d 442; Villa-

pando v. Industrial Commission, 70 Ariz. 55, 216 P.2d 397.

The factual situation leading to the determination that petitioner's injuries were non-compensable may be summarized as follows: Plaintiff was employed underground in the company's mine at Ray, Arizona. His duties consisted of taking care of the toilets used underground. The toilet contents were captured in pails, which were elevated to the surface, emptied, cleaned, and returned to various locations throughout the mine. In the performance of these duties, petitioner was required to walk through various drifts in the mine and proceed to different levels where the toilet facilities were located. On a certain drift on the 1625 foot level petitioner stored bottles of disinfectant which were used in the process of cleaning and disinfecting the cans. These materials were kept in a storage compartment or "doghouse" dug into the wall of the drift. The drift where the accident occurred was 7 feet wide in the clear, being timbered with 12 x 12's which left the drift 9 feet wide between sets. Car rails were laid 30 inches apart in the middle of the drift floor. Petitioner testified that when he reached the station where his disinfectants were stored he reached down to pick up one of the bottles when an explosion occurred which blew off a part of his left foot. In answer to a question as to what happened, he said, "I don't know what I stepped on." Other questions and answers were:

"Q. Were you just reaching for the disinfectant when it took place? A. Yes.

"Q. So, you were probably standing still at the time the accident occurred? A. I couldn't tell you. I went to reach for it and then I didn't know no more about it." (He did call for "help.")

Due to a failure of the lights at this time petitioner was proceeding with a miner's lamp. At the time of the accident there were three other maintenance employees within a distance of 100 feet or more in a diagonal drift. No mining was being done in this drift. One of these employees saw a flash and heard a blast, and immediately went to the scene, where he was joined by another employee. Upon their arrival petitioner was found to be crawling on his hands and knees at a distance of approximately 15 feet from where the blast had occurred. When inquiries were addressed to him to discover what had happened, he said, "They shot both of my feet off," "Somebody shot me, there was two." One of the witnesses testified, "I asked him how it happened and he told me * * * that two Russians were trying to kill him, * * *." Immediately after the accident petitioner was removed to the hospital where he continued to make incoherent statements; repeatedly said that Russians were trying to kill him; and asked for a pistol with which to kill himself. In his claim filed with the commission, in attempting to answer a written question as to how the accident occurred, he stated, "While working there was an explosion. Do not know cause."

Petitioner at the time of his oral examination before the referee testified that he didn't know what happened or what caused the accident; that he had seen dynamite and caps in a paper box at the storage compartment located in the doghouse some three weeks before; that he saw no dynamite or caps at this location on the day of the accident; and that "there was always some powder around there, blasting caps and things like that. * * * Lots of times they just left it there, the foremans couldn't see it there."

The lagging boards adjacent to the doghouse were splintered; particles of the petitioner's shoe were found in the area; skin and bones were splattered on the lagging; splinters and shattered lagging, badly burned, were found on the "sill" (floor of the drift). A minute examination at the scene of the blast did not disclose any powder burns on the rails, and no hole in the ground (floor of drift). The mine engineer testified that this indicated to him that the lagging boards had been subjected to powder blast. This witness discovered *fresh tar* on the sides of the lagging which indicated to him that a fuse had been blown by powder up against the lagging.

Witnesses Black and Trujillo testified that they were employed at the motor pit about 100 feet from where the accident occurred; that the blast was not loud and sounded as though it were made by less than a stick of dynamite. Black testified that he talked to petitioner several minutes before the accident; that petitioner inquired the time of day, and reported that he was all through work; that petitioner said that he felt bad and was sick; that he didn't appear natural; and that he seemed to be downhearted.

The day following an experiment was conducted at the site of the explosion and accident. The witnesses took their respective positions occupied before the accident. A cap was exploded. Witness Black, who had heard the explosion, testified that the explosion of the cap did not make enough noise, and was not comparable to the explosion he heard the day before. It was only when half a stick of dynamite was exploded by means of cap and fuse that a comparable flash and explosion was created.

Mr. Dave Maddox, field engineer of the Apache Powder Co., a man of wide experience, employed as a consultant in the use of powder, testified that the type of powder used by the employer was "of 30% strength, very low grade powder"; that it requires a detonator No. 6 cap and fuse to explode it; and that he had never heard of powder being exploded by stepping on it.

■ Petitioner, assertedly not being able to tell how the accident occurred, relies on the admitted facts of his employment and injury sustained at a place where his duties required him to be during the hours of his work, fortified by the presumption against self-maiming. This presumption is rebuttable and does not control where there is substantial proof from which the conclusion of self-inflicted injury may be reached by rational consideration. Johnson

216

v. Industrial Commission, 35 Ariz. 19, 274 P. 161; 58 Am.Jur., Workmen's Comp., Sec. 436. The commission has determined that the injury was not an accidental one. We are not prepared to say that this conclusion is erroneous and contrary to the evidence in view of all the circumstances, particularly the severity of the explosion, powder burns, and *fresh* tar on the lagging boards, all of which indicate that powder was exploded by means of a cap and fuse which had been ignited by contact with fire such as might be provided by a lighted match.

Our appraisal of the evidence is that, though circumstantial, it is sufficiently strong and convincing to have justified the triers of the facts in reaching the conclusion that they did.

The award is affirmed.

UDALL, STANFORD, PHELPS and DE CONCINI, JJ., concur.