363 P.2d 930

**Major MEAD, Petitioner,**

v.

**AMERICAN SMELTING & REFINING COMPANY, Respondent Employer, and the Industrial Commission of Arizona, Respondent Insurance Carrier.**

No. 7194.

Supreme Court of Arizona.

En Banc.

July 17, 1961.

Udall & Udall, Tucson, for petitioner.

Guynn, Twitty & Sievwright, Phoenix, for respondent employer.

James D. Lester, Phoenix, Donald J. Morgan, Frances M. Long, Edward E. Davis and C. E. Singer, Jr., Phoenix, of counsel, for respondent Industrial Commission of Arizona.

LOCKWOOD, Justice.

Petitioner seeks by certiorari to overturn respondent Industrial Commission's Award for Non-Compensable Claim. In April, 1958, petitioner Mead, suffering from asthma and a pulmonary disease known as emphysema, filed his claim for compensation, which was denied by respondent Commission in November, 1958. Timely protest and petition for rehearing followed, several lengthy hearings were held, and in September, 1960, the Commission presented its Amended Findings and Award for Non-Compensable Claim. The Commission found, *inter alia,* that:

" * * * 6. The ore dust and odor of reagents within the mill building where claimant performed his duties did not exist in hazardous quantities, nor was claimant exposed to hazardous conditions of odor or dust in his working premises within the mill building.

\* \* \* \* \* \*

"9. Claimant in June of 1957 transferred to the filter plant. In performance of his duties therein he constantly wore a respirator and was not exposed to injurious amounts of dust or odors.

\* \* \* \* \* \*

"11. Claimant returned to work for the defendant employer in August of 1957 as a laborer and with the exception of a brief exposure to paint odor he was not exposed to ore dust nor re-agent odors; claimant's respiratory condition worsened progressively and he terminated his employment in January of 1958.

"12. Claimant's employment with the defendant employer and the conditions thereof did not cause, precipitate or aggravate his pre-existing bronchial asthma, a respiratory disease, nor did his employment or the conditions thereof cause, precipitate or aggravate the claimant's emphysema, a respiratory disease, or the related respiratory conditions of which claimant complains."

Immediately thereafter, counsel for petitioner, by letter of September 27, 1960, protested the award and requested the Commission to make a specific finding whether precipitating or aggravating a pre-existing asthmatic condition may constitute an "industrial accident" within the meaning of our workmen's compensation statutes, A.R.S. § 23-901 et seq. Petitioner's letter was treated as a Petition for Rehearing and was denied by Order of respondent Commission. This appeal followed, in which it is contended that (1) the Award is arbitrary and not supported by the evidence of record, and (2) the question of whether aggravation of a pre-existing asthmatic condition constitutes an "industrial accident" was improperly ignored by respondent Commission in its denial of the Petition for Rehearing.

In making a determination as to the propriety of the Award, it is necessary to review here petitioner's employment and medical history. Petitioner was employed by respondent American Smelting & Refining Company, hereinafter referred to as "the company", on or about January 12, 1955, as an unskilled laborer. He was examined before being accepted for employment by Dr. Stuart Over, the company doctor, who stated in the Medical Examination Report that petitioner's lungs were clear and resonant, the "X-ray chest shows no evidence of active pulmonary disease", and that Mead was "OK for employment." Dr. Thomas Keely's X-ray diagnosis for the company was "essentially negative chest." Petitioner first went to work as a "process laborer" doing cleaning work in the middlings thickener, where the ore is processed in a chemical solution. After about two months he moved into the ball mills section of the mill, where he stayed for about 14 months, working as a "helper" to the ball mills operator for most of the time. His duties as "helper" included tending the so-called "ball mills", where the ore is ground and mixed with chemical reagents. During this same period, he also did clean-up work where the ore drops from the storage bins onto the conveyor belts, sweeping up the dust in the area around the belt, cleaning parts of the machinery with diesel oil and other chemical substances, cutting a dry sample at the ore drop box, reaching his hand into the box for the sample every hour, and cutting wet bucket samples of ore mixed with the reagents, where he said the fumes had a "loud smell".

Petitioner apparently was in good health throughout most of 1955, but in December of that year and January of 1956, he began to cough heavily and went to Doctor Goss at the Tucson Clinic, who reported:

"Due to the fact that Major Mead has an acute bronchitis which is aggravating his asthma I believe it would be better if he were given a job not associated with dust and moisture until he recovers from the acute phase of his illness."

He was transferred then to the pump house where there was less dust but where he was still exposed to the wet ore mixture with the chemicals in it. Despite the transfer, he "passed out" while at work on April 14, 1956, and was taken to the Veterans' Hospital, where he remained for about two weeks. After this hospitalization, Dr. C. A. Janda, the ward physician, stated:

"As a result of your recent * * * hospitalization, you are hereby informed that our clinical impression is that your major problem is episodal bronchial asthma and anxiety reaction, both of which historically have been present four or more years.

· "Under the circumstances, occupations that involve inhaling certain fumes or dust clouds probably will at times cause recurrence of these two type symptoms. Your occupational rehabilitation should be made accordingly."

Once again, Mead returned to work, this time in the filter room, where his duties included sweeping up the concentrate under the conveyor belt and spreading the loads around in the truck with a shovel. During this period, Mead was given a recheck examination by Meade Clyne, another company physician, who stated in his Medical Examination Report that petitioner had "acute asthma made worse by dust." Petitioner was only able to remain at work in the filter room for about a month and a half, before being hospitalized by Dr. P. J. Angiulo, who reported, *inter alia*, that:

"The exciting agents that cause asthma are numerous and varied. Some of the commoner causes are extrinsic substances such as dust and pollens and intrinsic causes such as infection.

"Mr. Mead can trace his present condition to the inhalation of dusts he was subjected to while on the job at the American Smelting and Refining Co."

Upon discharge, Mead attempted to go back to work on a labor gang outside the mill, but was almost constantly under the care of a doctor and unable to carry on the work after January, 1958.

In April, 1958, petitioner began treatment with Dr. Henry Stanford, a chest specialist. Dr. Stanford made multiple tests and studies of Mead, which showed that his vital capacity was one-half a normal man's measurement and his breathing capacity was 31% of normal. Dr. Stanford testified that Mead is more susceptible than others to outside stimuli, particularly to acrid smells as from chemicals, which in certain individuals can produce more irritation than in others. He further stated that smells, dust or fumes repeatedly coming in contact with the inner area of the lung can cause emphysema, " * * * by initiating the original basis of the obstructive phenomena that will result in emphysema." Dr. Stanford concluded that petitioner now has a disabling permanent condition, which could not have been caused in so short a time from exposure merely to Tucson dust, and that exposure to the conditions of Mead's employment was a causative factor in his bronchial irritation which ultimately led to the emphysema.

In February, 1959, petitioner was examined by Dr. William Brook Steen, a specialist in respiratory diseases and allergies, on behalf of the defense. Initially, Dr. Steen expressed an opinion contrary to that of every other doctor whose report or testimony had been admitted in evidence. Dr. Steen stated " * * * I do not believe his employment * * * had *anything* to do with his present condition." (Emphasis

supplied.) Subsequently, in answer to various questions, Dr. Steen made the following statements:

"Q. * * * Then will you agree with me doctor, that at least one of the contributing factors in the fact that Major Mead today has emphysema was the fact that he went out and worked, regardless of where he went to work * * *?

"A. All right, I will go that far."

* * * * * *

"Q. * * * Can't you agree with me in honesty * * * that the dust, along with the smoking and everything else, was one of the several problems that causes Major Mead today to have emphysema. A. To be relegated down below a notch of some place, a very very minor factor. These other conditions I have spoken about are much more—

"Q. From your point of view they are much more important? A. More important. To me this is a non-specific irritant. * * *

* * * * * *

"Q. Do I understand that as to all these qualifications, Dr. Steen, unless I missed it somewhere down the line, as you have qualified it, dust is one of the contributing factors in Major Mead's case? A. Very minor, very minor.

"Q. A minor, yes. A. Very, very minor factor."

It is well established in this jurisdiction that in a workmen's compensation proceeding, the burden is on the claimant affirmatively to show, by a reasonable preponderance of the evidence, that he is entitled to compensation and the Industrial Commission is not required to disprove such a claim. See, e. g., Sheridan v. Industrial Commission, 84 Ariz. 264, 327 P.2d 90. Among other things, the claimant must specifically show by a reasonable preponderance of the evidence that the injury or illness complained of arose out of and in the course of his employment. The test as to whether the injury or illness arose out of the employment is that there be a causal relationship between the injury and the conditions under which the work was to be performed. Johnson v. Arizona Highway Department, 78 Ariz. 415, 418, 281 P.2d 123, 125; Treadway v. Industrial Commission, 69 Ariz. 301, 307, 213 P.2d 373, 377; Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 408–409, 158 P.2d 511, 516.

Respondent employer asserts that the medical evidence on the question of causation is conflicting, and it is true that where medical evidence is conflicting, the findings of the Industrial Commission are binding upon this Court. Damiani v. Industrial Commission, 86 Ariz. 269, 344 P.2d 1020; Henninger v. Porter, 85 Ariz. 184,

334 P.2d 765. From a review of the record, the evidence of medical witnesses, regarding causal factors of the illness, was not conflicting, although the weight assigned to these causal factors did differ. Six doctors supplied the Commission with evidence regarding the question of causation, and five of the six unequivocally indicate that petitioner's condition was either precipitated or aggravated by the conditions under which he worked. The testimony of the sixth, Dr. Steen, concedes that the conditions under which petitioner worked were a "very, very minor factor" in producing the illness for which compensation is now claimed. Having admitted the conditions of petitioner's employment caused, in part, his emphysema, the doctor's additional assertions that other non-employment factors were "more important" cannot be regarded as determinative of the question of causation. In Murray v. Industrial Commission, 87 Ariz. 190, 199, 349 P.2d 627, 633, we held that

"* * * what constitutes proximate cause is a legal question primarily dependent for its answer on the facts of the particular case. In the field of medicine, opinions of doctors qualified by training and experience as to causation are competent, and in many cases controlling and binding upon the trier of facts; however, when the medical facts on which such opinions are based are clearly shown, and the medical

opinion as to causation conflicts with the inescapable legal conclusion, the former must give way to the latter. * * * The law * * * endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes *more than one cause* for a particular injurious result." (Emphasis supplied.)

These statements are clearly applicable to the case at bar. Dr. Steen's concessions that the employment conditions constituted "a very very minor factor" in precipitating or aggravating petitioner's emphysema, coupled with the other overwhelming medical evidence that the employment setting was definitely a causative factor in producing petitioner's condition, compels the conclusion that there existed the requisite *legal* causal relationship between the illness and the conditions under which petitioner performed his work. Johnson v. Arizona Highway Department, 78 Ariz. 415, 418, 281 P.2d 123, 125; Treadway v. Industrial Commission, 69 Ariz. 301, 307, 213 P.2d 373, 377; Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 408–409, 158 P.2d 511, 516. Where there are several reasonable inferences to be drawn from the evidence, the drawing of such inferences is exclusively within the Commission's province, and its conclusion will not be disturbed on appeal. However, where as here, the Commission arbitrarily disregards the only reasonable inference, its award must be set

38

aside. Harrington v. Industrial Commission, 84 Ariz. 356, 328 P.2d 311.

The question of whether or not precipitated or aggravated pre-existing asthma constitutes an industrial accident is of course, if raised by the petitioner, a question to be first determined by the Commission in view of our decision that a causal relationship existed between petitioner's employment and the consequent result. Award set aside.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and JENNINGS, JJ., concur.