NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CRESCENT CROWN DISTRIBUTING, L.L.C., *Petitioner Employer*,

TWIN CITY FIRE INSURANCE CO./SEDGWICK CMS, *Petitioner Carrier*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

TY A. KETTERLING, *Respondent Employee*.

No. 1 CA-IC 13-0016

FILED 3-6-2014

---

Special Action - Industrial Commission
ICA Claim No. 20121-210050
Carrier Claim No. 30120452064-0001
The Honorable Deborah Nye, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Charles G. Rehling
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for ICA*

Taylor & Associates, P.L.L.C., Phoenix
By Briana E. Chua
*Counsel for Respondent Employee*

———————————————

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Kenton D. Jones joined.

———————————————

**S W A N N**,  Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding that the respondent employee ("Claimant") sustained a compensable industrial injury.  The employer and the carrier contend the administrative law judge ("ALJ") legally erred by finding that Claimant's injury arose out of and in the course of his employment.  Finding no legal error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Claimant worked as a set merchandiser for the petitioner employer, Crescent Crown Distributing, L.L.C. ("Crescent Crown"). Claimant's job required him to visit grocery stores to break down pallets of boxed beer, arrange back stock, and fill store shelves.  As part of his uniform, Claimant was given the option to wear either shorts or pants. Claimant chose to wear shorts, and frequently scratched his legs on the cardboard boxes of beer as he navigated cramped stockrooms and narrow aisles.  According to Claimant, the storage area at the grocery store that he worked at on Tuesdays was particularly cramped and had very small aisles.  While working at that store on Tuesday, March 27, 2012, Claimant received the usual types of scratches on his legs.

¶3        As part of his normal work schedule, Claimant did not work the next two days, Wednesday and Thursday.  On Friday, he worked as usual but in the evening began to feel "a few small symptoms."  The next morning,  he  reported  to  work  but  had  to  leave  because  he  was

2

experiencing a fever, chills, and flu-like symptoms. The next three days, he went to work but still felt sick. On Wednesday, April 4, he noticed, for the first time, a dime-sized wound on the front of his left shin. By the next morning, his lower left leg was swollen and he sought medical care. He was ultimately diagnosed with a streptococcal bacterial infection. As a result of the infection, he was hospitalized for almost three weeks and underwent four surgeries to debride his leg wound and cover it with a skin graft.

¶4            Claimant filed a workers' compensation claim that was denied for benefits. He timely protested and requested an ICA hearing. The ALJ held three hearings and heard testimony from Claimant, three of Claimant's coworkers, Claimant's medical expert, and an independent medical examiner. Finding that Claimant's testimony was credible and that the preponderance of the evidence showed that the entry point for his infection was an abrasion sustained at work, the ALJ entered an award for a compensable claim and affirmed the award upon review. Crescent Crown then brought this special action.

## JURISDICTION AND STANDARD OF REVIEW

¶5            We have jurisdiction under A.R.S. §§ 12-120.21(A)(2) and 23-951(A), and Ariz. R.P. Spec. Act. 10. We defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

## DISCUSSION

¶6            The burden to prove a compensable claim belongs to the claimant. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512, 698 P.2d 753, 757 (App. 1985). The claimant must show that his injury arose out of and in the course of employment. A.R.S. § 23-1021(A). Such showing involves both legal causation and medical causation. *DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App. 1984). Legal causation requires that the claimant, acting in the course of his employment, suffered an injury that arose out of and in the course of his employment and was caused in whole or in part by a necessary risk of the employment or the employer's lack of due care. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 71, ¶ 19, 117 P.3d 786, 790 (2005). Medical causation requires a showing that the industrial accident caused the injury. *Id.* at ¶ 20.

¶7 Medical causation typically requires expert medical testimony. *See McNeely v. Indus. Comm'n*, 108 Ariz. 453, 455, 501 P.2d 555, 557 (1972). To support an award, a medical opinion must be premised on findings of medical fact. *Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434, 513 P.2d 970, 972 (App. 1973). If not based on an accurate factual background, medical testimony may be insufficient to support the award. *Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151, 654 P.2d 296, 299 (App. 1982). But while an award cannot be supported by equivocal or speculative expert testimony, an expert's opinion need not be based on positive knowledge of causation to be sufficient. *Harbor Ins. Co. v. Indus. Comm'n*, 25 Ariz. App. 610, 612, 545 P.2d 458, 460 (1976). It is for the ALJ to resolve conflicts in the medical testimony. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975).

¶8 Here, Crescent Crown contends that the testimony of Claimant's medical expert lacked foundation because Claimant failed to meet his burden to show that he was injured at work on March 27, 2012. We disagree. The ALJ expressly found that Claimant's testimony was credible, and the ALJ is the sole judge of witness credibility. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984). Claimant testified that he had received scratches while working on March 27 but could not specifically recall the circumstances because he routinely sustained such injuries. Further, several of Claimant's coworkers confirmed that such injuries occurred in their line of work, and that the injuries typically healed without any treatment and therefore were not reported to the employer.

¶9 Claimant's medical expert testified that the infection on Claimant's leg, and Claimant's other symptoms, were caused by group A streptococcal bacteria, a bacteria commonly found on the skin that may enter the body through a break in the skin. With respect to causation, the expert's testimony was as follows:

> Q. Okay. And what's your understanding of how this began for him?
>
> A. My understanding is that in [Claimant's] line of work, he routinely encounters minor traumas to various extents, and some of which he may not think would need any form of treatment, and he's come to believe that one of those episodes had led to this wound on his shin and which led to

the medical visit at the urgent care . . . and so on, and things just got worse from there after a couple of days of trials of antibiotics and some . . . intramuscular shots of antibiotics until I saw him.

Q. Okay. If that is true, that history you have in your terms of getting scratches and scrapes on his legs routinely at work, if you assume that he received those scratches and scrapes at work, would you relate the subsequent infection to his work, his work activities?

A. I essentially agree with [the independent medical examiner's] assessment in that any scratch of any form anywhere from any cause can cause this, and obviously you have to really be there to see the first scratch and to see how it happened and follow it from then on to know for sure 100 percent certainty. But, like I said, his history sounds credible in the sense that he's had the same type of injuries in the line of work and then these injuries in the line of work for sure can cause the type of injury that he has.

Q. Okay. We talk in terms of probability here at the Industrial Commission. Do you believe within a reasonable degree of medical probability, assuming that [Claimant's] account's correct and he sustained these scratches on his legs at work on March 27, 2012, that those caused or contributed to the infection that he had? . . . . And when we say that, we are talking about more likely than not, more than 50 percent, so 51 percent that you would be able to say to a reasonable degree of medical probability that the infection that [Claimant] had that eventually caused this necrotizing myositis were related to the scratches he sustained at work.

. . . .

A. Yes, I do. I think that the history is consistent, bear with me, but in actuality of being in the grocery business as well when my parents were in it, he would do that and you do labor, manual labor where you get injury when you hit the shin. That's a very common type of injury from a common sense from that standpoint, and I think that's why it's possible, very possible that he, more than 50 percent

> probability, that he sustained one of those injuries at work. I don't know when, but he had one of those, and it is very probable to lead to one of these infections.

The expert's tesimony also established that the onset of Claimant's symptoms was temporally consistent with an abrasion sustained on March 27. The expert's inability to say with certainty that Claimant's infection resulted from an abrasion received at work did not render his opinion insufficient. The "sequence of events, plus [medical] proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause." *Breidler v. Indus. Comm'n*, 94 Ariz. 258, 262, 383 P.2d 177, 179 (1963) (citation omitted).

**¶10** We reject Crescent Crown's contention that the instant case presents causation issues of the type found in cases such as *Treadway v. Indus. Comm'n,* 69 Ariz. 301, 213 P.2d 373 (1950), which dealt with a claimant who contracted coccidioidomycosis, a fungal disease commonly known as "valley fever." In *Treadway*, the claimant alleged that he contracted valley fever at work while unloading dusty tents from California at a Phoenix warehouse. 69 Ariz. at 304, 213 P.2d at 375. The supreme court held that the claimant was not entitled to workers' compensation benefits because he failed to establish a causal connection between his employment and his valley fever. *Id.* at 308, 213 P.2d at 377. The court explained that in order to recover compensation, the claimant was required to prove that "he was subjected to some special exposure in excess of that of the commonalty," *id.*, and he could not meet this burden because the spores that cause valley fever are prevalent throughout Arizona, *id.* at 308, 213 P.2d at 378.

**¶11** Here, the evidence established that streptococcal A bacteria is present on every person's skin and can enter the body and cause infection through any type of a break in the skin. But though Claimant was no different from any other person with respect to the presence of the bacteria on his skin, he was subjected to special exposure for infection because his work caused him to have greater opportunity to sustain breaks in his skin.

## CONCLUSION

**¶12** We hold that the ALJ did not err by concluding that Claimant proved a compensable claim for an injury arising out of and in the course of his employment. We therefore affirm.



Ruth A. Willingham · Clerk of the Court
FILED: mjt