344 P.2d 1020

Michelina DAMIANI, widow of Peter Damiani, deceased, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA and Mardian Construction Co., Respondents.

No. 6588.

Supreme Court of Arizona.

Oct. 21, 1959.

270

John E. Madden and John Geoffrey Will, Phoenix, Foster G. Mori, Phoenix, for petitioner.

Robert K. Park, Phoenix, John R. Franks, Donald J. Morgan, James D. Lester, and Frances M. Long, Phoenix, of counsel, for respondent, The Industrial Commission of Arizona.

STRUCKMEYER, Justice.

Petitioner, widow of Peter Damiani, instituted this claim for death benefits under the Workmen's Compensation Law. A.R. S. § 23–901 et seq. Respondent, The Industrial Commission, entered an award denying death benefits, which award petitioner asks that we review.

The deceased, Peter Damiani, a 65-year-old cement finisher, worked a full eight-hour shift on Tuesday, Wednesday, Thursday and Friday during the week prior to his death. At various times during these days, he worked in a kneeling position, supporting his body with his left hand and using a trowel in his right hand to smooth the concrete. On Friday he complained of pain in his left hand. By Sunday the left hand and arm had become swollen and numb, and decedent sought medical care. He was hospitalized, and on Thursday, February 23, 1956, his left arm was amputated because of a gangrenous condition. On February 29, 1956, Damiani died. During treatment, decedent told certain of his doctors that he had slipped and fallen at work, striking the inner portion of his upper left arm. The arm itself showed no external signs of trauma. The cause of death was bronchial pneumonia, the result of the gangrene of the upper left arm, which in turn was caused by a thrombotic occlusion of the brachial artery of the upper left arm.

The issue before the Commission was whether the occlusion which ultimately caused decedent's death was traumatic or arteriosclerotic in origin. Dr. Jacob Reichert testified unequivocally that the occlusion was caused by a trauma to the upper left arm. On the other hand, Dr. Harry F. Steelman testified:

"A. It was my impression he had thrombosis of the distal portion of the

brachial artery arteriosclerotic in etiology * * *."

Other doctors testified that the occlusion could have been caused by either, but that the probabilities favored trauma. The Commission obviously adopted the opinion of Dr. Steelman in that its finding was "That decedent's death on February 29, 1956 was the result of preexisting arteriosclerotic condition."

We have laid down the rule in this jurisdiction that where equally honest and experienced medical witnesses reach opposite conclusions, we will not say as a matter of law that the Commission is required to accept one opinion rather than the other. Lopez v. American Smelting & Refining Co., 84 Ariz. 7, 322 P.2d 890; Hewett v. Industrial Commission, 72 Ariz. 203, 232 P.2d 850. Petitioner does not question the force of our prior holdings, but instead argues that the opinion of Dr. Steelman cannot be accepted because it was predicated upon a misunderstanding of the report of the pathologist, Dr. Seymour B. Silverman, who examined the amputated left arm of Damiani. The pathological findings contained no positive medical evidence of trauma. Accordingly, Dr. Steelman was of the view that in the absence thereof he would have to consider the occlusion as non-traumatic in etiology.

The hearing at which Dr. Steelman testified was recessed, and Dr. Silverman was subsequently called as a witness. He testified that he examined the thrombosis in the brachial artery of the arm, and that he found evidence of damage to the intima, the inner lining of the artery. He concluded that there was damage to the intima because it could no longer be detected as a definite coat in the area of the thrombosis; that growth of scar tissue had commenced external to the intimal lining; that if the intima is intact, this growth of scar tissue does not occur. From this fact of damage to the intima at the point of the thrombosis, petitioner seeks to have the conclusion drawn that the thrombosis was of traumatic origin. Such, however, is not compelled by other testimony of Dr. Silverman.

"Q. * * * Taking the arteriosclerosis you found in and of itself be of sufficient severity to cause damage to the intima to have formed a thrombus? A. Yes, that is a possibility."

Under the circumstance that the damage to the intima need not necessarily have been caused by trauma, we cannot say the conclusion of Dr. Steelman was unjustified, nor can we say that the Commission could not accept his conclusions rather than those of the other medical witnesses.

Award affirmed.

PHELPS, C. J., and UDALL, JOHNSON and BERNSTEIN, JJ., concur.