454 P.2d 580

**Edith U. PIEPKORN, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**E. N. Basha (Bashas), Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 193.**

Court of Appeals of Arizona.

May 14, 1969.

Rehearing Denied Aug. 6, 1969.

Review Denied Oct. 7, 1969.

Gorey & Ely, by Joseph M. Bettini, Phoenix, for petitioner.

Robert D. Steckner, Acting Chief Counsel, by Michael A. Lasher, Jr., and Joseph S. Jenckes, V, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, for respondent Carrier State Compensation Fund.

STEVENS, Judge.

This case is before the Court by writ of certiorari to review the lawfulness of an award and findings of The Industrial Commission issued 16 January, 1968 denying the petition to reopen.

The petitioner was injured in an industrial incident on 14 February, 1958. After numerous procedural moves and several medical consultation reports, the file was closed by Commission action taken on 31 March, 1961. The action so taken affirmed a prior denial of a request to reopen the claim. The 1961 action became final.

On 24 November, 1965, petitioner again sought to reopen the claim. The final action denying this request was entered on 16 January, 1968 and the matter was then brought to this Court by a writ of certiorari.

There are two basic questions which are presented to the Court. The first is whether the opinion of a qualified doctor which was adverse to the petitioner and was based upon an examination of the file is entitled to be considered by The Industrial Commission. The second is whether the evidence presented in relation to the petition to reopen reasonably required that the petition be granted.

To better understand the problems presented to the Court it is necessary that the facts be briefly outlined.

Initially the petitioner's complaint, the thrust of the physical examinations, and the treatment were related to the petitioner's right hand, right arm and shoulder. In connection with her treatment, she received cervical traction. She also received psychiatric evaluation. On 27 May, 1959 a myelogram was performed. "No definite persistent abnormality" was "seen" in the cervical area.

The file reflects that it was following the myelogram that the petitioner first complained of lumbar or low back problems. These are the problems with which we are now confronted. The psychiatrist's report of his 10 June consultation states that it was on approximately 31 May while "she was walking slowly to visit a neighbor when she was 'hit' with a severe low back pain which resulted in persistence of the symptoms * * *". The attending physician's report of his examination of 11 June, 1959 indicates that "patient has had low back and bilateral leg pains since May 31st * * *. She states that the low back and leg pain started on the 4th day of the myelogram and has persisted to the present. * * * If symptoms persist more than a few days, she should be rehospitalized for spinal fluid studies." The rehospitalization was accomplished with

negative results. In corroboration of these medical reports at a hearing conducted in 1966, the petitioner testified:

"Q. Will you tell us when you made a complaint about your back?

A. They did a myelogram on my back in May, 1959.

\* \* \* \* \* \*

A. It was about three days after the myelogram was performed."

The low back problem was considered by medical consultation boards on 3 July, 1959, on 13 October, 1959 and on 12 April, 1960. All of these matters took place prior to the initial closing of the file as above recited on 31 March, 1961.

In 1965 she conferred with Dr. Scheetz and with Dr. Gregory. As aforestated she filed a petition to reopen in November, 1965. Without granting the petition The Industrial Commission heard evidence on the issue as to whether the claim should be reopened and the first phase of the hearing was held in July, 1966. The evidence presented brought out that on 9 May, 1966 Dr. Gregory performed surgery. He testified:

"A. We did a laminectomy and excision of the herniated nucleus at L4, L5. There was a rather marked herniation of the posterior longitudinal ligament at each one of these levels which was causing pressure against the nerve root at each level. Following the resection the nerve root was freely moveable and so was the cord in the area."

He related the condition which he found to the 1958 injury.

On cross-examination, both Dr. Scheetz and Dr. Gregory testified that they based their conclusions as to the causal relationship between the 1958 incident and the 1966 surgery upon the history which the petitioner had given to them without the opportunity of an examination of The Industrial Commission file. On cross-examination Dr. Scheetz stated that assuming an absence of low back pain complaint until after the 1959 myelogram that he could not

with reasonable medical probability relate her problem to the 1958 incident. He further testified that, " \* \* \* well, the only history I have is that she had a myelogram in 1959 and that the trouble had been present prior to that time and had been recurring from that time until the present."

On cross-examination Dr. Gregory stated that if there were no low back complaints from February 1958 until after the myelogram of May 1959, such facts would have a bearing upon his opinion. He further testified:

"A. I am testifying to the fact that at the same time she sustained the injury to the shoulder, the upper area, that she could most probably have sustained an injury to the low back which, over a period of time, allowed this to occur.

Q. Then, Doctor, you are assuming there was a low-back injury in February, 1958, is that correct?

A. Yes sir, this was my information.

Q. And this is because you were told of a low-back problem from 1959?

A. Well, the patient told me she had injured her back as well as the upper area at the time, this was the information I have.

Q. If that section were not so, she did not suffer an injury to her back in February, 1958, your opinion would have been modified?

A. I would have to."

The referee who conducted the hearing recommended that the case be accepted for reopening. The Industrial Commission returned the file to the referee with the recommendation that the file be submitted to the medical department "for recommendations as to desirability of an orthopedic examination for the purpose of determining the relationship between the discovery of the protruded disc in 1966 and the industrial episode of Feb. 1958." In response to this request the file was referred to the medical department and we quote the response.

"TO: COURTNEY L. VARNER, REFEREE

"FROM: DR. WALTER V. EDWARDS, MEDICAL DIRECTOR

"In accordance with our discussion, the file on this claimant is returned to you herewith.

"As I indicated in my discussion, in my opinion orthopedic *examination* at this time would serve no useful purpose in answering the question raised by you and the Commission. The patient has since that time been operated upon and physical findings at this time would be consistent with the postoperative state and not necessarily related to the accident in question.

"However, in my opinion, some of the questions which are raised might be adequately answered by review of the file by an orthopedic surgeon with the competence and objectivity and ability to express himself characterized by Dr. James Lytton-Smith.

"I would suggest that the entire file, including the microfilmed old records, the more recent reports and the transcript of hearing be forwarded to him for his review by you, posing the specific question of the relationship between the discovery of a protruded disc in 1966 and the industrial episode of February 14, 1958, or the myelography performed in connection with that incident.

"I am sure that Dr. Lytton-Smith will be most cooperative. If he is not available other orthopedic surgeons could serve equally well including Dr. Ronald Haines, Dr. Howard Aidem, or Dr. Thomas Taber, Jr."

In accordance with this communication, the file was referred to Dr. Lytton-Smith who rendered his report. The report was submitted to petitioner's counsel. By letter transmitting the report it was requested that counsel advise the referee as to, " * * * whether or not you desire a further hearing for the purpose of examining Dr. Lytton-Smith." We then find a memorandum to the file from the referee stating, "Applicant's attorney desires to cross-examine Dr. Lytton Smith" and thereafter a notice of hearing bearing the notation, "At the Request of Applicant's Attorney to Cross-examine Dr. Lytton-Smith."

The hearing was held on 14 September, 1967. At the inception of the hearing, petitioner's counsel offered to place her on the stand for brief testimony as to the exact mechanism of the incident and as to her history since the last hearing. This was objected to. The objection was sustained. The petitioner's attorney urged that the file did not reflect the actual mechanism of the injury. The offer further stated, "She was not particularly aware of the back, low back pain, until approximately a year later." The Commission attorney pointed out that much of the proffered matter was reflected in the earlier transcript and the petitioner was not permitted to testify. This referee was not the same referee who had conducted the earlier hearing.

Without attempting to detail Dr. Lytton-Smith's testimony, he expressed his professional opinion that when you consider the time interval between the industrial incident of February 1958 and the onset of back pains in May 1959 together with a review of the extensive file relative to medical examinations and consultations that there was an absence of the causal relationship between the industrial incident, the back pains complained of in 1959 and the surgery in 1966.

Answering the first question which we posed as to whether Dr. Lytton-Smith's testimony was entitled to weight since his opinion was based upon examination of the file without a physical examination of the petitioner in her postoperative condition we hold that he was qualified to so testify. Tipton v. Industrial Commission, 7 Ariz. App. 39, 435 P.2d 874 (1968).

In answer to the second question as to the sufficiency of the evidence to sustain a denial of a re-opening, we hold that there was at the least a conflict of professional opinion which was resolved against the petitioner by The Industrial Commission and that she did not sustain the burden of proof cast upon her in support of her petition to reopen.

The award is affirmed.

DONOFRIO, C. J., concurs.

CAMERON, Judge (dissents).

For the purposes of this dissent some pertinent facts should be restated even though they are thoroughly covered by the majority opinion.

After the hearing of 19 and 20 July, 1966, the referee recommended that the Commission "enter an appropriate decision upon hearing accepting the reopening of applicant's case." Objections to the referee's report were filed and the Commission recommended that the matter be submitted to the "medical department for recommendations as to the desirability of an orthopedic examination". The memorandum from Dr. Edwards of the medical department to Referee Courtney Varner is set forth in the majority opinion. Dr. Lytton-Smith thereafter did review the file as requested and a report adverse to the petitioner was filed. Petitioner requested a hearing on Dr. Lytton-Smith's report which was held 14 September, 1967 before a new referee who had not participated in the earlier hearings or proceedings.

I would set the award aside for two reasons. First, I do not believe that under the facts in this case Dr. Lytton-Smith's report and testimony were competent to overrule the previous testimony based on actual physical examination and treatment of petitioner. Secondly, I believe that the denial of petitioner's request to be heard before the new referee denied her the right to a fair and impartial hearing to which she was entitled.

## TESTIMONY BASED UPON REVIEW OF THE FILE

This Court has recently stated:

"We do not find that Dr. Fisher's testimony having been rendered on facts contained in the claims file makes it any less acceptable than the other medical evidence in this case." Tipton v. Industrial Commission, 7 Ariz.App. 39, 42, 435 P.2d 874 (1968).

As followed in the instant case, I would disaffirm the language in Tipton, op. cit., and hold that medical testimony based solely on a review of the Commission file is of less weight and cannot overcome medical testimony based upon physical examination of the injured workman. It is one thing to have further medical testimony, further medical examination and further consultations in an effort to ascertain the correctness of diagnosis of the medical experts and to aid the Commission in resolving conflicts in the evidence including medical testimony. The Commission has the right and responsibility of so doing. Waller v. Industrial Commission, 99 Ariz. 15, 406 P. 2d 197 (1965); Baxter v. Industrial Commission, 6 Ariz.App. 156, 430 P.2d 735 (1967).

It is quite another thing, however, to use the procedure followed in the instant case as a device for merely creating sufficient conflict in the evidence upon which the Commission can deny petitioner's industrial claim. In fairness, I must admit that this may not have been the intent in the instant case and the file before this Court is certainly silent in this regard, still the procedure used by the Commission could certainly give rise to a reasonable suspicion that this is what was happening. I would set the award aside for this reason.

## REFUSAL TO ALLOW PETITIONER TO TESTIFY

As the record discloses, the petitioner at the second hearing requested that she be allowed to testify which request was denied by the new referee. The offer of proof

made at that time is set out fully in the majority opinion. The petitioner has not specifically raised this issue on appeal. I feel, however, that it is necessary to discuss this since it goes to the heart of petitioner's right to a fair and impartial hearing.

It should be remembered that the petitioner has the burden of proof to show that she is entitled to compensation. Lopez v. Kennecott Copper Corp., 71 Ariz. 212, 225 P.2d 702 (1950). This standard is not relaxed when the proceeding is to reopen. See Lowry v. Industrial Commission, 92 Ariz. 222, 375 P.2d 572 (1962). I fully realize that petitioner was allowed to present her case initially, but when the matter was continued for further action and then the matter set for hearing on the report of Dr. Lytton-Smith, petitioner should have been allowed to present further testimony, including her own, which would have attempted to fulfill this burden.

In Powell v. Industrial Commission, 102 Ariz. 11, 423 P.2d 348 (1967), our Supreme Court pointed out that The Industrial Commission is not bound by the findings of the referee which "shall be advisory only", A.R.S. § 23–928, but "'the duty to make the determination was that of the Industrial Commission itself and the fact that they disagreed with their referee is of no legal consequence'." I do not read this statement to mean that the right to appear before the referee is not a very substantial right. Davis, Administrative Law Treatise, Section 11.18, page 112, in discussing the problem of substitution of officers, states:

> "The relation between examiner and agency is thus quite different from the relation between trial judge and appellate court. The controlling judgment, even with respect to findings based upon demeanor, is that of agency. The examiner's role is only little more than that of an advisor; it is more only in that the initial or recommended decision is usually served upon the parties, and in that the initial decision may become final in absence of appeal by either party and in absence of review by the agency of its own motion.

> "The system is thus fundamentally one in which the decision is made, even when demeanor of witnesses is vital, by officers who have neither seen nor heard the witnesses, and the decision is not made by the officer who has seen and heard the witnesses.

> "This observation leads to the principle which should govern substitution of hearing officers. The principle is that when demeanor of witnesses is a substantial element, deciding without taking that factor into account is undesirable and may be unfair, but when demeanor of witnesses is unimportant, no unfairness results from substituting one hearing officer for another at any stage of the proceeding, and no unfairness results if the agency makes a decision on the record without a report from the hearing officer. The key consideration is to prevent the demeanor of witnesses, whenever it may be a substantial element, from getting lost from the case."

Under the facts in this case it is my impression that the demeanor of the petitioner was very important if not critical in the decision of this case of conflicting medical evidence. The first referee had all the witnesses before him, was able to personally judge their demeanor and on this basis recommended that the petition to reopen be granted. The second referee had only one witness, a doctor who had never examined the petitioner. The new referee then recommended that the petition be denied. His decision was founded on the testimony of respondent's doctor and the cold record. It may well be as the majority opinion suggests that had petitioner testified at the second hearing the result would not have been changed. That, however, is not the question. The question is, should she have been allowed to testify? I believe she should have been so allowed. I can perceive no error on the part of the new referee in allowing petitioner to testify and no prejudice to him in observing the demeanor of the petitioner under oath while

so testifying. I do believe it was error to refuse the request.

I would set aside the award of the Commission.