534 P.2d 1077

**Tommie P. CRAWFORD, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**W. R. Skousen Contractor, Inc., Respondent Employer,**

**Northwestern National Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 1088.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 8, 1975.

Rehearing Denied June 13, 1975.

Review Denied July 10, 1975.

Charles M. Wilmer, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robbins, Green, O'Grady & Abbuhl, P. A. by Richard W. Abbuhl, Phoenix, for respondents employer and carrier.

OPINION

NELSON, Presiding Judge.

Tommie P. Crawford (Crawford), while working as an operator of a rock crusher for W. R. Skousen Contractor, Inc. (Skousen), at Tonopah, Arizona, exhibited symptoms which were later diagnosed as coccidioidomycosis (valley fever). Because of an immunological deficiency, Crawford's valley fever progressed to a much more severe disease, coccimeningitis, which resulted in his hospitalization and a state of non compos mentis at the time of the Industrial Commission hearing in this cause. During the proceedings described herein, Crawford's wife acted as his guardian.

Crawford filed a claim for workmen's compensation, alleging that his valley fever and subsequent valley fever meningitis were a direct result of his employment as

an operator of a rock crusher for Skousen. Skousen's insurance carrier (Northwestern National Insurance Company) denied the claim. Crawford protested the denial and a hearing was held. The hearing officer found the claim to be non-compensable. The matter is now before us for review by Writ of Certiorari.

While both parties have presented the question for review here in terms of the sufficiency of the evidence to sustain the award of the Industrial Commission of Arizona, our review of the record in this case, as well as the prior decisions of this Court and the Supreme Court of Arizona, has convinced us that the question to be decided here and now is the broader and more ultimate question: is it possible for a workman who both resides and works in the desert regions of Arizona to sustain his burden of proof as to contracting the disease of coccidioidomycosis (valley fever) in the course of and arising out of his employment? After a full review of the record here before us, in light of the decision of this Court in O'Connor v. Industrial Commission of Arizona, 19 Ariz.App. 43, 504 P.2d 966 (1972) and the decision of the Supreme Court of Arizona in Treadway v. Industrial Commission, 69 Ariz. 301, 213 P.2d 373 (1950), it is our conclusion that the answer to the question is that it is not possible for a workman to sustain his burden of proving that he contracted valley fever as a result of his working conditions. We therefore affirm the award of the Industrial Commission in this case.

While Dr. Arnold L. Serbin, a specialist in lung diseases, was apparently willing to testify that Crawford's valley fever was, to a reasonable medical certainty, related to his occupational setting, a careful reading of his testimony reveals that he came to this admittedly legal conclusion (see Enyart v. Industrial Commission of Arizona, 10 Ariz.App. 310, 458 P.2d 514 (1969)), on the basis of the same increased statistical probability which this Court rejected as being insufficient to "rise to the standard of 'reasonable medical certainty'" in O'Connor, supra. In light of this Court's ultimate holding in this case, and because of Dr. Serbin's outstanding qualifications in this field, we will set out portions of his testimony in some detail.

First we note the doctor's response to the long primary hypothetical question relating to Crawford's work setting and the onset of the valley fever and subsequent valley fever meningitis. After objection and some further discussion, the final portion of counsel's question was:

"Q. BY MR. WILMER: Doctor, with regard to the hypothetical facts I have given you, I have asked you if you have an opinion as to whether or not the development of the disease that we know he [Crawford] has today was to a reasonable medical probability precipitated by that particular exposure [work environment]?

"A. Valley Fever is acquired by inhalation of spores, fungus spores. These spores are found in southwestern United States predominantly in the area of Arizona, predominantly in Arizona and southern California. *With reasonable medical certainty I would be of the opinion that any man exposed to a dusty environment would have a greater likelihood of acquiring Valley Fever.*

"I would feel that the most likely source of his Valley Fever infection would be related—with reasonable medical certainty would be related to his working conditions. Valley Fever is acquired by inhalation. The initial infection is pulmonary. From the pulmonary source especially if someone has an immunological deficiency such as the type of deficiency that Mr. Crawford has, this type of individual would be very much more likely to then develop a Valley Fever meningitis as as [sic] extension of his initial Valley Fever pulmonary infection, so that in essence my feeling is *that again using the legal term with a reasonable medical certainty,* I feel there is a direct correlation between Mr. Crawford's illness, Valley Fever, and his job occupation. (Emphasis added)

\* \* \* \* \* \*

"Q. Is it true, Doctor, that the cocci spores are found in greater quantities in shallow surface dirt as opposed to deep surface dirt or rock?

"A. This is true, *but it doesn't always have to be because you can have Valley Fever spores existing anywhere.* When the spores are in nature they are usually in the upper layers of the earth, but they don't necessarily have to be. They could have been transmitted through air conduction from another source and be present in a dusty area. So that to try to say that there is a definite correlation between the upper layer of a rock that Mr. Crawford was working on and a Valley Fever spore I think is a very difficult thing.

"What I am trying to say is that those individuals who work in an area where Valley Fever is predominant [Arizona] and who also work in an area which is extremely dusty [Crawford's job site] and who then afterward come down with a Valley Fever pulmonary infection and who then subsequently are found to have an immunological deficiency and furthermore then develop Valley Fever meningitis, in my opinion again with reasonable medical certainty *I feel strongly that there is a direct correlation between this type of illness and the occupational environment.* (Emphasis added)

\* \* \* \* \* \*

"Q. Is your opinion based on the information you have regarding his [Crawford's] working conditions in conjunction with your clinical examination of Mr. Crawford?

"A. No. It's based on current knowledge of the pathogenesis of Valley Fever; because at the time I saw Mr. Crawford he already had Valley Fever, and he already had Valley Fever meningitis."

After determining that cocci spores could be identified in a particular soil or dust sample in a laboratory, and after further determining that such tests simply weren't done, this question and answer followed:

"Q. BY MR. WILMER: Your testimony is, Doctor, that a test is not done, is that correct?

"A. No, because we feel medically that Valley Fever is an endemic infection of the southwestern United States. We really don't know where somebody acquires Valley Fever or how he acquires Valley Fever or why one person acquires it and another person does not. But it's been shown that statistically those people who work in the outdoors, those people who work in dusty environments, have a greater incidence of acquiring Valley Fever. So we usually don't go into the —as physicians we usually don't go into a study as to where the Valley Fever came from, but really we made [sic] the diagnosis and then attempt to treat the Valley Fever.

"Q. [omitted]

"A. Again I repeat myself. I feel very strongly that there is a direct correlation between this man's working environmental situation and his illness. This is based on medical—not on medical fact, but on medical practice and my experience in treating numerous cases of Valley Fever during the past ten years."

All of the foregoing testimony of Dr. Serbin was elicited on direct examination. The following additional factors were reviewed on cross-examination:

"Q. BY MR. ABBUHL: Would you agree, Doctor, that Valley Fever is a very common airborne disease in this area?

"A. Yes.

\* \* \* \* \* \*

"Q. Doctor, do you have any way of telling exactly where the spores that Mr. Crawford has came from?

"A. No.

"Q. Do you have any way of telling exactly what time or when it was that he contracted these spores that eventually led to his coccimenigitis?

"A. No. In fact, in brief, getting back to your point, if someone were to contract a contagious disease, a venerial [sic] disease such as syphilis, and we know that he has had contact the week before, we can document this is probably where he got his venereal disease from. But the point that you are trying to make is that I can't and I don't think anybody else can tell you exactly where Mr. Crawford got his Valley Fever or if he in fact got his Valley Fever from his environment while working or while at home or perhaps while vacationing somewhere out of state.

"My point on the whole thing is that with reasonable medical certainty, I feel that with his working conditions, with the dusty environment, with his immunological disorder, it is most probable that this is where he acquired it.

     \*       \*       \*       \*       \*       \*

"Q. Now Doctor, you have based your opinion that Mr. Crawford probably got his coccimeningitis from his work *purely on the basis that his work provides in your opinion a statistically greater chance of coming in contact with the spores, isn't that true*? (Emphasis added)

"A. That's true.

"Q. And it's your feeling then that a person who works in a dusty environment has a statistically greater chance of contracting Valley Fever?

"A. In Arizona.

"Q. Because this is an endemic area for Valley Fever?

"A. Right.

"Q. What do you mean by endemic area?

"A. That it is found in great part only in this area and not in other areas.

"Q. Does endemic to Arizona mean that it only occurs around rock crushers?

"A. No, it occurs in Arizona. I don't know that it occurs around rock crushers. All I can say is that the disease Valley Fever is unheard of in the eastern part of the United States.

"Q. And it's true that the majority of Valley Fever spores are found in the soil within one to three inches of the surface? [There was evidence that about 6–10 inches of the topsoil had been removed prior to begininning the rock crushing operation here in question.]

"A. In nature, but they can be located right on the table in front of us right now. All you'd have to do is take some dust and blow it in through these ventilators and the Valley Fever spores can be right on this table.

"Q. Do they occur in dust storms?

"A. Yes, they do.

"Q. And dust storms occur frequently in the flatter areas of Arizona, don't they?

"A. Right. And the dust storms can deposit the spores of Valley Fever on any surface, on any exposed surface.

"Q. Do you agree that Mr. Crawford's contracting Valley Fever could be a mere coincidence associated with the fact that he worked in a dusty environment?

"A. Yes, in all fairness to your question, this could be a mere coincidence; and it's been shown that you can take any number of people and just certain numbers of these will acquire Valley Fever and others will not. And in reference to your prior question, it's been shown that people who have come to Arizona for one day have developed Valley Fever and those who have been in Arizona for 50 years have never developed Valley Fever.

"And the reasons for this are not known. It's also been shown that you can be driving through the state of Arizona and roll down your car window and take one breath of air and develop Valley Fever. This has been shown.

"Q. Dr. Serbin, you know, I believe, or maybe you don't know, that Mr. Crawford had been a rock crusher operator for seven or eight years and prior to his

contracting Valley Fever meningitis he would be exposed to large amounts of dust during those operations too, wouldn't he?

"A. If you say he worked in this environment, I suspect he would be.

"Q. And during that period of time you would expect him to come in contact with some cocci spores in the air, wouldn't you?

"A. Yes, and I don't know why he didn't acquire Valley Fever prior. I don't think anybody can say why he didn't acquire it prior. Again, I point out the fact that we don't know what his immunological status was at that time, and he may have developed an immunological deficiency during recent times and this may have predisposed him to acquiring his infection currently rather than previously.

"I don't think that I could document or anybody else could document when he acquired Valley Fever or how he acquired Valley Fever, and I think the only contribution that I can make, and I again repeat myself, with reasonable medical certainty, taking everything into consideration, it would be my opinion that there is a direct relationship between his illness and his occupation.

"Q. Doctor, do you have any opinion as to how much his work statistically increased his chances of contracting Valley Fever over the general population?

"A. No.

"Q. Do you know anyone who has such information?

"A. I would doubt that this question could be answered."

The hearing officer then asked Dr. Serbin to clarify a little the terms Valley Fever, coccimeningitis, coccipulmonary disease, and the other terms quoted, supra. While the doctor's answer may be a little repetitious, again, in view of our broad holding, we deem a further explanation in order:

"A. Okay. Briefly, there is a disease called coccidioidomycosis. This is a fungus disease. This fungus disease was initially discovered in the late 1800's and it was initially discovered in Argentina. There is an area in Argentina where Valley Fever is found.

"Subsequent to that in the early 1900's this disease was discovered in California, and then more recently in Arizona. At first people didn't know what this disease was, and then it became evident that it was a fungus-type disease. Because the disease was originally described in the San Joaquin Valley of California it became known as Valley Fever. It has no reference to Valley of the Sun, the reference was to the San Joaquin Valley of California.

"The disease was considered to be a rather uncommon, if not rare disease prior to the early 1940's, predominantly because there weren't very many people who lived in the areas where this disease was found. And when people in the area did develop this disease the disease was given various nick names such as desert rheumatism or the bumps or summer cold or something like that.

"During the early 1940's because of the military bases in this area and also in the southern California area, soil that had been undisturbed for centuries was now disturbed by bulldozers and other devices, and so the spores that had been left undisturbed for centuries now were breathed in through the air, and many of the young people, young service personnel, Army and Marine Corps, Air Force, developed Valley Fever during that time. Then after the war many people moved into the southwestern part of the United States, developers came along and built tract homes. They then disturbed more soil that had been undisturbed for centuries. More people moved into the area. And more people developed Valley Fever.

"So the nick name for the disease is Valley Fever, the medical term is cocci-

dioidomycosis. Now the fungus can infect almost any organ of the body. However, the most likely source of acquiring this disease is through inhalation of the spore. The spore than sets up an infection within the lung, and certain people such as Mr. Crawford, the body defense mechanisms are not sufficient to contain it within the lung; and then the disease disseminates, and we call it disseminated coccidioidomycosis.

"If it disseminates to the nervous system, as it did in Mr. Crawford's case, then we call it coccioidal meningitis, or Valley Fever meningitis, or coccimeningitis. So basically those are the definitions of the disease."

There is, of course, other medical testimony in the record reviewing the same facts both as to Mr. Crawford and as to the disease, but coming to a different legal conclusion regarding the issue of "reasonable medical certainty". While it might appear that we should thus simply resolve the case on the classic grounds that the Industrial Commission is the finder of fact and resolver of conflicts in medical testimony, Martin v. Industrial Commission of Arizona, 20 Ariz.App. 376, 513 P.2d 383 (1973); Hurley v. Industrial Commission of Arizona, 20 Ariz.App. 227, 511 P.2d 671 (1973), we believe that the decisions in *O'Connor,* supra, and *Treadway,* supra, preclude the extensively cited testimony from raising a conflict in the testimony, even though the magic phrase of "a reasonable medical certainty" was added.

■ Judge Eubank's opinion in O'Connor v. Industrial Commission of Arizona, supra, makes it clear that the decision in Treadway v. Industrial Commission, supra, is still the law and that in order for a disease to be compensable as arising out of and in the course of employment, there must be a causal connection with the employment, and not a mere coincidental connection, and there must be a clearly established facet of special exposure in excess of that of the "commonalty", *Treadway,* supra. For example, see Enyart v. Industrial Commission of Arizona, supra.

As to the fact of statistically increased probabilities, *O'Connor* is on all fours and cannot be distinguished:

"In the instant case, the medical testimony was that the working conditions statistically increased petitioner's capacity to contract the disease [valley fever], and that he probably contracted it during the period of employment, between July and September of 1968. Other evidence, however, indicated that the entire area in which petitioner resided was dusty, that he not only drove to and from work under dusty conditions, but that he lived in a trailer and took weekend trips during the period in question in the same geographic area as the construction site. Thus, although the extreme dust conditions on the job were exceptional, the circumstances of duty and the Valley fever spore were prevalent during off-work hours throughout the area in which petitioner lived and worked. In other words, he could have contracted the disease at any time of day anywhere in that geographic area.

"Although medical opinion as to when petitioner contracted the disease is peculiarly within the realm of expert medical knowledge and may not be disregarded by the Commission, Enyart v. Industrial Commission, supra, *the doctor's testimony that the working conditions statistically increased the probability of contracting the disease does not rise to the standard of 'reasonable medical certainty',* and there was sufficient contrary evidence in the record on which the Commission could base its conclusion that petitioner had not sustained his burden of proving that he contracted the disease by inhaling the spore while on the job, in accordance with the test of Treadway v. Industrial Commission, supra." O'Connor v. Industrial Commission of Arizona, 19 Ariz.App. at 47, 504 P.2d at 970 (1972). (Emphasis added)

**584**

Counsel for petitioner and his physician have made as good a presentation as is possible under the state of the law in Arizona. It is simply not possible to prove that a workman who works out of doors in Arizona, whether in normal or abnormal dusty conditions, contracts valley fever as a result of his work, as opposed to any other time he is exposed to this endemic disease at home, at play, or anywhere else.

The award is affirmed.

STEVENS and WREN, JJ., concur.