**Rex CRIM, Plaintiff-Appellee,**

v.

**INTERNATIONAL HARVESTER COMPANY and International Harvester Company Truck Division, Defendants-Appellants.**

**No. 79–3643.**

United States Court of Appeals,
Fifth Circuit.
Unit A

May 21, 1981.
Rehearing Denied June 18, 1981.

Strasburger & Price, Royal H. Brin, Jr., Dallas, Tex., for defendants-appellants.

Wellborn, Houston, Bailey & Perry, Rex Houston, Blake Bailey, Henderson, Tex., for plaintiff-appellee.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE,* District Judge.

* District Judge of the Western District of Texas, sitting by designation.

SUTTLE, District Judge.

International Harvester[1] appeals from a judgment entered against it in a negligence action brought by Rex Crim, an International Harvester dealer from Henderson, Texas. In January of 1977, Crim traveled to Phoenix, Arizona, at the request and expense of International Harvester for a demonstration of the International Scout, a new four-wheel-drive vehicle designed to compete against the jeep. The site of the demonstration was the International Harvester proving grounds, located near Phoenix in desert valley land. At the day-long affair, Crim and other dealers from around the country test drove the Scout on desert tracks laid out for the occasion, stirring up large quantities of dust.

A few weeks after Crim returned home, he became ill with a flu-like disease that his doctor was unable to diagnose. Crim was transferred to a hospital in Tyler, Texas, where an internist who had been stationed out West with the United States Air Force was able to identify the illness as coccidioidomycosis, or valley fever. After being treated with a special medication known as Amphotericin B, Crim was transferred to Phoenix, Arizona, for further treatment.

Valley fever is a disease caused by spores found near the surface of the desert soil or, according to plaintiff's expert, in the air when the soil is disturbed by human activity. Most of those who contract valley fever have mild symptoms or no symptoms at all; they recover completely and are thereafter immune. Sometimes, however, valley fever is more severe. When it takes the disseminated form, which means the disease spreads to areas outside the lung, an estimated 50% of the infected die. Because the disease spread to Crim's lymph nodes, he had the disseminated form of valley fever.

Crim brought suit against International Harvester, claiming that International Harvester negligently failed to warn him of or to protect him from the possibility of contracting valley fever. The jury found in

1. International Harvester Company and the International Harvester Company Truck Division.

Crim's favor and awarded him $55,000 in damages. On appeal, International Harvester contends that it did not have a legal duty to warn or protect Crim. International Harvester further contends that there is insufficient evidence of probative force to show that International Harvester failed to exercise ordinary care or to show that Crim contracted his illness while on the International Harvester proving grounds. Finding these contentions to be without merit, we affirm the trial court's judgment upon the jury verdict.

## I. DUTY

■ International Harvester correctly looks to the substantive law of Arizona for the duty it owed to Crim. The district court is to apply the choice-of-law rules of the forum state, which in this case is Texas. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 418 (5th Cir. 1980). Texas recently abandoned its traditional choice-of-law rule in tort cases, *lex loci delicti*, in favor of the "most significant relationship" test set out in Sections 6 and 145 of the Restatement (Second) Conflicts of Law. *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). The court's analysis under the new rule does not turn on the number of contacts the event had with each

jurisdiction, but, more importantly, on the qualitative nature of those contacts as they are affected by the policies of the rule. *Id.*, at 319.

■ Numerically, the contacts in this case are equally balanced.[2] Analysis of the underlying policies of the rule, however, bears out the premise that Arizona is the state with the most significant relationship to the controversy. Arizona has a specific interest in defining the duty that its landowners and occupiers of land owe to business invitees. Also, application of Arizona law promotes certainty and uniformity; Arizona landowners should not be subjected to different legal duties depending on an invitee's state of residence. Finally, application of Arizona law protects the landowners' justified expectation that their obligations vis-a-vis their land are governed by the law of the state in which the land is situated. The Court finds that Arizona substantive law governs the duty issue.

The standard of care that Arizona courts expect landowners or occupiers of land to show to business invitees is derived from Section 343 of Restatement (Second) Torts. *Berne v. Greyhound Parks of Arizona*, 104 Ariz. 38, 448 P.2d 388 (1968); *Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 554 P.2d 655 (1976). Thus, the district court's charge to the jury was properly based on Section 343.[3]

2. The plaintiff resides in Texas, the relationship of the parties was centered there, and it was in Texas that Crim did not receive advance warning of the danger awaiting him. On the other hand, the defendant is a landowner in Arizona, the injury occurred there, and it was also in Arizona that International Harvester failed to warn or protect Crim.

3. After instructing the jury that the defendant was an occupier of the premises and the plaintiff was an invitee, the court gave the jury the law:

Under the law, an owner or occupier is subject to liability for physical harm caused to his invitees by a condition on the premises if:

(a) He knows, or by the exercise of ordinary care would have discovered the condition, and should realize that it involves an unreasonable risk of harm to invitees;

(b) Should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and

(c) Fails to exercise reasonable care to protect them against the danger.

The term "unreasonable risk of harm" means a condition in which there was sufficient probability of a harmful event occurring that a reasonably prudent person, in the exercise of ordinary care, would have foreseen that it, or some similar event, was likely to happen.

The owner or occupier has the duty to exercise reasonable care in inspecting its premises to discover any latent defects which could be discovered in the exercise of reasonable care, and to make safe any such defects or to give an adequate warning concerning any such defects.

This does not mean that the occupier is an insurer of the safe condition of his premises. His duty is to keep his premises reasonably safe, and use a reasonable degree of care in

■ Nevertheless, International Harvester contends that Arizona courts hold that an owner or occupier of land in Arizona does not have a legal duty to warn a visitor of valley fever. International Harvester relies upon a very broad reading of *Randolph v. Arizona Board of Regents*, 19 Ariz. App. 121, 505 P.2d 559 (App.1973), *cert. denied*, 414 U.S. 863, 94 S.Ct. 84, 28 L.Ed.2d 119 (1973),[4] in which an Arizona appellate court held that as a matter of law the University of Arizona does not have a duty to warn prospective students about valley fever. The determination that the University did not have a duty to warn in light of the foreseeable risk necessarily involved a multitude of policy considerations. *See, Rodriguez v. Besser Co.*, 115 Ariz. 454, 565 P.2d 1315, 1321 (App.1977).

The case now before the court simply does not entail the same policy considerations as *Randolph*. International Harvester is not a state university soliciting thousands of applicants from across the country to move to Arizona for their education. Rather, International Harvester is a private business inviting employees and business associates to testing grounds for the express purpose of test driving Scout vehicles in the desert. This activity exposes the participant to an intense concentration of stirred-up dust, which, Crim's experts say, greatly increases the chances of contracting valley fever in its disseminated form. We hold only that the duty to warn or protect devolves upon private businesses that bring business invitees to Arizona from non-endemic regions for the specific purpose of engaging in human activity on their land that guarantees exposure to intense concentration of dust stirred up by that activity.

By so holding, the court does not suggest that the whole State of Arizona and all its landowners have a duty to warn every prospective tourist or other visitor. Nor will our holding generate the endless stream of cases that the *Randolph* court feared. We do not hereby place a catastrophic financial burden upon a public entity with limited means to shift the loss, or significantly undermine the Arizona court's value judgment that a person cannot be insulated against all risks of living. Accordingly, the *Randolph* ruling does not exempt International Harvester from the Section 343 duty it owes as an owner or occupier of land to its invitees.

## II. EVIDENCE OF KNOWLEDGE AND REASONABLE CARE

■ International Harvester also contends that the jury had no evidence from which to conclude (1) that International Harvester knew of, or by the exercise of ordinary care would have discovered, the unreasonable risk of harm, and (2) that International Harvester failed to exercise reasonable care to protect Crim. Both contentions are without merit.

Crim produced ample evidence on the knowledge issue. He tendered evidence of newspaper publicity, television documentary coverage, and literature that was readily available to the public. Furthermore, two managers of the International Harvester proving grounds testified they knew about valley fever, as did the local doctor that acted as International Harvester's Medical Examiner.

Likewise, the jury certainly had evidence before it from which to conclude that International Harvester did not exercise reasonable care under the facts of this case. Ac-

---

inspecting and discovering dangerous conditions.

An invitee is entitled to expect that an owner or occupier will take reasonable care to ascertain the actual condition of the premises and having discovered it either to make it safe by repair or to give warning of its actual condition and the risk involved therein.

However, the owner or occupier is subject to liability for a condition on its premises if,

and only if, it knows of the condition or by the exercise of ordinary care would have discovered the condition on its premises.

4. Decisions of the Arizona intermediate courts control absent a strong indication that the Arizona Supreme Court would decide the issue differently. *Mott v. Mitsubishi International Corporation*, 636 F.2d 1073, 1074 (5th Cir. 1981).

cording to International Harvester's evidence, Arizona landowners do not, as a rule, warn or try to protect visitors from exposure to valley-fever spores. But the jury was not presented with the question of what steps any reasonable landowner would take to protect any visitor. Here, the issue was what steps a reasonable business would have taken to warn or protect invitees brought from non-endemic regions to engage in a particularly risky activity. Also, the jury could have concluded from the conflicting evidence that protective masks worn in the heavy dust would filter out the infectious spores. In fact, for over 15 years International Harvester itself has furnished respirators to its heavy-equipment operators that test earth-moving machines at the proving grounds. There was sufficient probative evidence for the jury to find that International Harvester did not act reasonably in not warning Crim or providing him with a protective mask.

## III. EVIDENCE OF CAUSATION

Finally, International Harvester contends that Crim failed to produce evidence of probative force that his disease was factually caused by spores on or above the International Harvester proving grounds. At trial, an expert testified that the spores could probably be found on every parcel of desert land in southwestern United States. Another expert testified that, after being denied entry onto the proving grounds to test for spores, he collected 15 soil samples just outside the south boundary fence. Three samples, or 20%, contained the infectious spores, a percentage that is about average in Arizona. Thus, the jury could have reasonably inferred that the spores were in fact present in the dust or air at the proving grounds.

Crim also introduced sufficient evidence for the jury to infer that he contracted the disease at the proving grounds and not elsewhere during his brief visit to Arizona. Crim was exposed to the Arizona air when he traveled between airport and hotel, hotel and proving grounds, and hotel and company banquet in Rawhide, Arizona.

But Crim had two experts testify to the direct relationship between the quantity of the organism that is inhaled, and the development of the severe version of the disease. While a non-immune person like Crim could contract valley fever from breathing city air or, theoretically, from breathing even one spore, the disease so contracted would usually be the milder form. The greatest risk is to someone who gets a massive exposure to the spore; that person is much more likely to become acutely ill, especially if he or she is from outside the endemic area. The evidence at trial indicated that Crim had a massive exposure to the spore at the Scout demonstration at the proving grounds.

To support its position that Crim did not prove causation, International Harvester cites a line of Arizona workers' compensation cases culminating in *Crawford v. Industrial Commission*, 23 Ariz.App. 578, 534 P.2d 1077 (1975). The cases hold that medical testimony that a particular type of work statistically increases the probability of getting valley fever does not constitute evidence of a causal connection between the disease and the employment, even when the doctor uses the magic phrase "reasonable medical certainty." In fact, the court in *Crawford* declared in no uncertain terms that it is just not possible to prove that a worker in Arizona got valley fever at work as opposed to any other time he was exposed to the spores.

The Arizona workers' compensation cases are easily distinguishable from this case. The plaintiffs in the *Crawford* line of cases were residents of Arizona who were regularly exposed to the valley-fever spores at home and in their leisure activities. Unlike the Arizona workers, Crim can pinpoint specific, isolated instances of heavy exposure. *See, cf., Barber v. Industrial Commission*, 25 Ariz.App. 486, 544 P.2d 703, 706 (1976). The *Crawford* line of cases does not prevent the jury from finding that Crim got valley fever at the Scout demonstration.

For the foregoing reasons, the judgment of the district court must be

AFFIRMED.