672 P.2d 953

**TUCSON UNIFIED SCHOOL DISTRICT,**
Petitioner Employer,

**Industrial Indemnity Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,**

**Earl Estep, Respondent Employee.**

No. 1 CA–IC 2882.

Court of Appeals of Arizona,
Division 1, Department C.

May 10, 1983.

Rehearing Denied July 26, 1983.

Review Denied Sept. 20, 1983.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Donald L. Cross, Larry L. Smith, Phoenix, for petitioners.

James A. Overholt, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Rabinovitz & Dix, P.C. by Bernard I. Rabinovitz, Tucson, for respondents.

## OPINION

OGG, Judge.

The issue in this Special Action—Industrial Commission is whether the evidence supports the administrative law judge's determination that respondent employee met his burden of proof in showing that he sustained an injury, in the nature of an occupational disease, arising out of and in the course of his employment. We find that the evidence does support this determination and therefore affirm the award.

Respondent employee, Earl Estep, filed a workmen's compensation claim for benefits for disability due to pulmonary cryptococcosis. His claim was that his disease was contracted by repeated and excessive inhalation of a fine, dusty dry powder created by the shredding of palm fronds which were covered by accumulated pigeon droppings containing the fungus spores cryptococcus

neoformans. Petitioner came into heavy and repeated contact with this dust in connection with his work in tree trimming as a ground maintenance man for Tucson Unified School District, petitioner employer.

Respondent began to feel the effects of the disease in May or June of 1981 and in July sought medical care from his family physician. For purposes of the award, the administrative law judge treated the date of injury as July 1, 1981.

After hearing conflicting medical testimony, the administrative law judge resolved the conflict in favor of the claimant and determined that respondent employee had sustained a personal injury arising out of his employment in the nature of an occupational disease which was governed by the provisions of A.R.S. §§ 23–901(12)(c) and 23–901.01 (Supp.1982).

On review, the carrier contends that the claimant failed to meet his burden of showing all the elements necessary to prove an occupational disease claim.

In support of its position, the carrier first argues that the opinion of Jerome C. Rothbaum, M.D., a pulmonary specialist, was incompetent to support the award because the testimony lacked adequate foundation.

■ We first recognize the well-established rule that if the results of an industrial incident are not clearly apparent to laymen, *medical evidence is required to establish the causal connection between the worker's condition and his employment.* *Western Bonded Products v. Industrial Commission,* 132 Ariz. 526, 647 P.2d 657 (App.1982); *Verdugo v. Industrial Commission,* 114 Ariz. 477, 561 P.2d 1249 (App.), *cert. denied,* 434 U.S. 863, 98 S.Ct. 194, 54 L.Ed.2d 137 (1977).

In the case at bar, Dr. Rothbaum was unequivocal in his professional opinion that the disease suffered by respondent is normally contracted by inhaling spores of the fungus. He testified that, in addition to his years of experience as a pulmonary specialist, he had reviewed medical literature about the respondent's disease and the treatment of respondent's condition. Given

the history of petitioner's employment, which included much higher than average inhalation of fine dust containing pigeon droppings, a known medium for the spore causing the disease, the physician was of the opinion that there was a clear relationship between respondent's job and his disease.

Other physicians testified on behalf of the carrier. They were of the view that under the state of the art of medicine in regard to this particular disease, it cannot be stated definitively that the disease can be contracted by inhalation of dust or powder containing the spores. On review, the carrier seeks to characterize this variation, not as a conflict in the medical testimony, but as an indication of insufficient foundation for Dr. Rothbaum's opinion that the disease was contracted through such inhalation. Thus, we are presented, not with the case in which the physician has an inadequate foundation of facts in regard to the claimant's work activities or the materials involved in the injurious exposure, but a case on which the medical experts differ or belong to different camps regarding the likelihood of such exposure causing the disease.

A similar dilemma was faced by the courts of this state in regard to early cases dealing with job-related heart problems. In one camp were the physicians who believed that heart attacks could happen at any time in a person with heart disease regardless of his work activities. In the other camp were those physicians whose experience and training and personal expert viewpoints led them to believe that on-the-job exertion could precipitate a heart attack. *See e.g., Stotts v. Industrial Commission,* 15 Ariz. App. 290, 488 P.2d 495 (1971).

■ A comparable situation is presented here. There is no lack of foundation for Dr. Rothbaum's credibility as an expert pulmonary physician who has treated rare cases of, and read medical literature concerning, pulmonary cryptococcosis. However, as in *Stotts, supra,* we have disagreement among the experts who testified regarding the underlying mechanics of the contraction of the

disease. This court will not accept the carrier's invitation to decide which camp of medical experts must be correct as a matter of law. Any disagreement among specialists in this area regarding the disease and the method of contracting it may affect the weight which the administrative law judge gives to the testimony of the various physicians. However, absent a showing that the expert is not qualified to testify about the matter, such disagreement does not go to the foundation or competency of the opinion expressed. Because Dr. Rothbaum was entirely competent to testify in regard to this pulmonary disease, we find no error in the administrative law judge's resolution of the conflict in the medical testimony in favor of the testimony of Dr. Rothbaum.

The carrier next contends that the award granting benefits is in error because the employee did not satisfy his burden of proof in establishing the elements required to show an occupational disease claim under the Workmen's Compensation Act.

The pertinent statute provides:

§ 23–901.01. Occupational disease; proximate causation

The occupational diseases as defined by § 23–901, paragraph 12, subdivision (c) shall be deemed to arise out of the employment only if all of the following six requirements exist:

1. There is a direct causal connection between the conditions under which the work is performed and the occupational disease.

2. The disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.

3. The disease can be fairly traced to the employment as the proximate cause.

4. The disease does not come from a hazard to which workmen would have been equally exposed outside of the employment.

5. The disease is incidental to the character of the business and not independent of the relation of employer and employee.

6. The disease after its contraction appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence, although it need not have been foreseen or expected.

We have examined the medical testimony as well as the testimony of respondent employee and other witnesses. The testimony showed that in his employment, respondent was exposed to a much higher concentration of pigeon droppings, known to contain the fungus, than a person who was not so employed. His work activities included feeding palm fronds into a shredder and standing near the shredder which blew out dry, powdery dust containing the shredded palm fronds and accumulated pigeon droppings. Respondent, working near the blower, inhaled the dust and also worked with the debris by using a shovel to distribute the shredded and powdered material evenly in the back of a truck. Given this history, Dr. Rothbaum was of the opinion that there was a direct causal connection between the conditions under which the claimant performed his work and the disease from which petitioner undisputedly suffers.

We find that Dr. Rothbaum's testimony reasonably supports the following additional conclusions: the excess exposure occasioned by petitioner's work activities created conditions which caused the disease to follow as a natural incident of the work; the on-the-job exposure could be traced to the disease as the proximate cause; the disease came from a hazard to which claimant was not equally exposed outside of his employment.

There is no dispute that inhalation of concentrated and accumulated pigeon droppings which are known to contain the spores which cause the disease does not ordinarily occur in the everyday environment of the average citizen. The respondent in this case was not similarly exposed to the spores in his off-duty hours. Further, the testimony shows that development of the disease is rare and is not endemic to Arizona. Thus, *Crawford v. Industrial*

**4**

*Commission,* 23 Ariz.App. 578, 534 P.2d 1077 (1975), and *O'Connor v. Industrial Commission,* 19 Ariz.App. 43, 504 P.2d 966 (1972), which precluded compensation for an endemic disease to which the claimants were similarly exposed in their daily lives, do not apply.

Based on the foregoing, we find adequate evidence to show that the disease had its origin in a risk connected with the employment (the risk of inhaling excessive quantities of spores in connection with the shredding of palm fronds), and that the disease flowed from that source as a natural consequence of the work activities whether or not it was foreseen or expected. A.R.S. § 23–901.01.

As a final argument, the carrier contends that because the spore or fungus causing this disease, cryptococcus neoformans, exists in the everyday environment to which all persons are exposed, the disease cannot be shown to be work-related and therefore, cannot be viewed as a compensable condition under the Workmen's Compensation Act. We do not agree with the reasoning put forth by the carrier. Other injury-causing substances may exist in the atmosphere to which we are all exposed. For example, many persons may be exposed to particles of silicon or asbestos in their work environments. However, when the exposure is so excessive as to create an additional risk connected with the employment, then the exposure to the injurious substance becomes work-related. As we have already noted, the disease in this case is rare and not endemic to Arizona. *Cf. Crawford, supra; O'Connor, supra.* Here, there is ample evidence that the respondent received a much higher level of exposure to material containing spores of the fungus cryptococcus neoformans than would the ordinary person in his daily environment and that this exposure created a direct causal relationship between the job and the disease. Thus, we reject the carrier's argument that pulmonary cryptococcus cannot be shown to be employment-related in this case.

We have found that the evidence supports the determination of the administrative law judge that each of the elements required to show an occupational disease claim have been proved.

The award is affirmed.

JACOBSON, P.J., and BROOKS, J., concur.